Argued February 18, decided February 25, 1913.

## EDWARDS *v.* MT. HOOD CONST. CO.

(130 Pac. 49.)

**Money Received—Contracts—Liability.**

1. Where a railroad contractor undertook through its general superintendent that plaintiff boarding employees of the sub-contractor should be paid, and instructed the sub-contractor to deduct from the wages of the employees the sums due for board, and retained the same out of the wages due the employees, plaintiff could recover from the contractor the amount thereof in an action for money had and received, for, though the contractor did not directly receive money from the employees, it received the equivalent thereof in the discharge of their claims.

**Money Received—Nature of Obligation.**

2. An action for money had and received is equitable in character, and may be sustained by any evidence that defendant has possession of money of plaintiff which in equity and good conscience he ought to pay over.

**Appeal and Error—Harmless Error—Erroneous Admission of Evidence.**

3. Where the jury, under the uncontradicted testimony, could only return a verdict for plaintiff, the error in permitting her to establish facts arousing sympathy in her favor was not prejudicial.

**Trial—Conduct of Presiding Judge—Improper Remarks.**

4. It is error for the trial court to express an opinion of the evidence in the presence of the jury, and it is improper to say to an attorney in the hearing of the jury that his case is infamous, and that his client shall not have a judgment, especially before the client has presented his case.

**Evidence—Weight.**

5. Where the witnesses of plaintiff were not impeached, and their testimony was reasonable and probable, the jury, in the absence of any contradiction, must receive it as true, and render a verdict accordingly.

**Appeal and Error—Harmless Error—Erroneous Remarks of Presiding Judge.**

6. Where the jury under the uncontradicted testimony rendered the only verdict that could be rendered, the error of the

presiding judge in expressing his opinion on the evidence in the presence of the jury, and saying to an attorney of the defeated party, in the hearing of the jury, that his case was infamous, and that his client should never have a judgment, was not prejudicial.

From Multnomah:   HENRY E. MCGINN, Judge.

Statement by MR. CHIEF JUSTICE MCBRIDE.

This is an action by Mary A. Edwards against the Mt. Hood Construction Co. for money had and received. The complaint alleges substantially that the defendant is a corporation engaged in the construction of a railroad, that at certain dates mentioned in the complaint plaintiff, at the request of defendant, furnished 355 meals at 25 cents per meal to divers laborers employed by defendant in construction work on the railroad, and that later she furnished 2,011 meals to laborers so employed by defendant, the total value of all meals so furnished being $591.50. The names and number of meals furnished each laborer are set forth in the complaint. The defendant paid said laborers for their services once a month. The complaint continues as follows:

"That defendant aforesaid employed a time-keeper whose business it was and who did keep an account of the names of the men and laborers so employed by said defendant, and the number of days that the said men and laborers who did work and furnished labor and services on said railroad construction work for said defendant in the construction of the said Mt. Hood Railroad, and did make, issue, and deliver to each and all of said men and laborers aforesaid working for said defendant on said construction line aforesaid 'time checks,' which said time checks showed and specified the number of days each and every one of said men and laborers were entitled compensation therefor. That said time checks so made and delivered specified and set forth the number of days each man and laborer worked and the amount of money due each one, and also the amount of each individual for hospital fees, commissary supplies, and the amount of each man and laborer so employed aforesaid so indebted

and owed plaintiff for board and meals for the time he worked for said defendant upon said construction work aforesaid up to and including the date of issuing of said time check. * * That said defendant by request and consent of the herein named employees retained, deducted, and kept from each and every man aforesaid and named hereinabove, the same being the said men and laborers working on said railroad and construction work as hereinabove named, specified, and set forth, the sum of seventy-five cents (75c) per day for each and every day, while each and every man and laborer was employed upon said construction work aforesaid, for his said meals and board, and acted as the agent for plaintiff herein and retained said money and now has said money in its possession and custody. * * That said defendant aforesaid so collected, received, and retained from each of the above-named men and laborers aforesaid and as specified hereinabove the said sum of seventy-five cents (75c) per day belonging to and to pay plaintiff herein for each and every day they were so employed upon said work aforesaid, and for the time between the dates as hereinabove named and specified making a total sum of five hundred and ninety-one dollars and fifty cents ($591.50), which said sum defendant has in its possession and control for and belonging to plaintiff herein. That from and including the twenty-eighth (28th) day of December, one thousand nine hundred and ten (1910), to and including December thirty-first (31st), one thousand nine hundred and ten (1910), and from and including the first (1st) day of January, one thousand nine hundred and eleven (1911), to and including the twenty-sixty (26th) day of January, one thousand nine hundred and eleven (1911), defendant hereinabove named retained and received the sum of seventy-five cents (75c) per day from each and every man and laborer named and specified herein for and on account of plaintiff herein, and which sum is the sum of five hundred and ninety-one dollars and fifty cents ($591.50) which defendant collected, retained and has appropriated belonging to and which was and is the property of plaintiff herein. That plaintiff has demanded said sum aforesaid from said defendant hereinabove named, and said defendant has refused and still refuses to pay plaintiff the said sum or any part thereof. * * That not one of the above-named men and

laborers herein specified and named working for said defendant in the constructing of said railroad aforesaid have been paid any sum or amount for the deducted meals and board, or received any money on account thereof, or has received any part of said sum of seventy-five cents ($.75) per day so retained and collected by defendant for them between the dates hereinabove specified."

There was a general denial of all material issues. On the trial plaintiff introduced evidence to the effect that one V. T. White was a sub-contractor of defendant for the construction of a portion of the roadbed, and applied to plaintiff to furnish board for his employees; that she declined to furnish the board on Mr. White's credit because he had failed to pay for board previously furnished; that defendant's general superintendent, Mr. Packer, came to her and told her to go ahead and board the men, and that the construction company would stand good for it; and that relying upon this promise she furnished meals as above mentioned. There was evidence tending to show that the defendant had instructed White, the sub-contractor, to give the laborers time checks upon the company's blanks for the amounts of their wages, deducting board and hospital dues, stating, in effect, that the company would have to pay these in any event, and that these time checks were so given and collected by the men. At the conclusion of plaintiff's testimony, defendant moved for a nonsuit, which was denied.

On the trial the following colloquy took place between court and counsel:

"Q. And did you have a contract with that lady to board these men?"

The Court: "It is immaterial whether he did or not—I cannot see how it is material in this case whether he had such a contract with her or not."

Mr. Banks: "We will save an exception to the ruling of the court."

The Court: "You may have an exception."

Mr. Banks: "And I also save an exception to the court acting as counsel for the plaintiff in this case."

The Court: "Very well, you may have your exception."

Mr. Banks: "Also save an exception to the court's actions in favor of the plaintiff in this case as indicated by the court's demeanor upon the bench."

The Court: "You may take your exception."

Mr. Banks: "And I also save an exception to the court acting in favor of the plaintiff in this case by its mental attitude, and its rulings and its attitude upon the bench, something which this defendant cannot get upon the record, but which is prejudicial to its rights, and before the court has even heard the testimony on behalf of the defendant; and I desire to further except and object, as strongly as I can possibly do so, and insist that it is not the business of the court to undertake to influence the jury by its attitude upon the bench in the trial of this cause, and I will say right here, and without any intention of offering an insult to your honor, and realizing that I am an attorney in the case, but necessarily am here to protect the rights of my own client, that I must protest against the attitude of the court in this case, and I wish the record to show that I am here, and do protest against the attitude of the court, the facial expression of the court in its rulings, the demeanor of the court as shown by its actions upon the bench during the taking of this testimony on behalf of the plaintiff in this case."

The Court: "You may have an exception to every bit of it, and you can get a photographer to take the facial expression of the court, and a phonograph of the voice of the court."

Mr. Banks: "And, if the court is willing, I am willing to put into the record that the court has stated to me, outside the trial of this case, that he did not propose to see the plaintiff in this action defeated, and that that statement was made before the testimony of the defendant had been presented. Does the court want that in the record?"

The Court: "Put everything in the record. I tell you now that this infamous case will not be decided against this woman."

Mr. Banks (to stenographer): "Just take that down, 'I tell you now that this infamous case will not be decided against this woman,' just put that into the record."

The Court: "Yes, put that into the record—against this woman it will not be."

Mr. Banks: "And we take an exception to that remark, to the remark of the court just made. Will an exception be allowed, your honor?"

The Court: "Certainly, certainly."

The court also permitted plaintiff, over defendant's objection, to testify that she was living in a tent, where she could not send her children to school; that she was compelled to stay there and work to pay the bills incurred in boarding the laborers of the construction company; that she and her husband had been compelled to mortgage their home to buy the groceries and provisions used to furnish food for these laborers, and to make other statements of a like character. The admission of this testimony is also alleged as error. Other alleged errors will be noted in the opinion.          AFFIRMED.

For appellant there was a brief over the names of *Mr. William W. Banks* and *Mr. A. E. Clark,* with an oral argument by *Mr. Banks.*

For respondent there was a brief with an oral argument by *Mr. J. A. Strowbridge.*

Opinion by MR. CHIEF JUSTICE MCBRIDE.

1. The first question to be considered is whether or not there was any testimony to go to the jury upon the case made by plaintiff. We think there was. Plaintiff through Packer assumed to see Mrs. Edwards paid. To do this it instructed White to deduct from the wages of the laborers, which it had assumed to pay, the sums due from them to Mrs. Edwards. Had it refused absolutely to apply these sums upon the laborers' board bills due Mrs. Edwards, they would have had a lien upon the road for the wages so deducted and unpaid, so that it was virtually compelled either to pay the laborers the whole amount of their wages, or to do the equivalent by

paying 75 cents per day out of the amount to Mrs. Edwards. Having kept this money out of the wages due the workmen for the latter purpose, it should not be permitted to enrich itself at the expense of Mrs. Edwards, nor of the laborers.

2. The action for money had and received is a form of recovery greatly favored by the courts on account of its equitable character. 27 Cyc. 849. An action for money had and received may be sustained by any evidence showing that the defendant had possession of money of the plaintiff which in equity and good conscience he ought to pay over to him. 8 Enc. Ev. 629. In the case at bar the defendant did not directly receive money from the laborers, but it received the equivalent of money in the discharge of their claims, and this is sufficient. 8 Enc. Ev. 628; 27 Cyc. 852.

3. The court erred in permitting the plaintiff to relate the various hardships suffered by her by reason of the nonpayment of the money, but the testimony as to the principal matter was uncontradicted by any witness, and in any event the jury could not have returned a different verdict, no matter where their sympathies lay.

4. It was error for the court to express its opinion of the evidence in the presence of the jury. The duty of a judge is to see that both sides of a case have a fair hearing, and that the jury renders an impartial verdict, without any suggestion or comment from the court as to what verdict ought to be rendered. To say to an attorney in the hearing of the jury that his case is "infamous," and that his client shall never have a judgment, and especially before the client has had an opportunity to present his side of the case, is language that should never be used in a court of justice. Upon the case presented by the plaintiff there was certainly some ground for the supposition that defendant had dealt unfairly with the plaintiff, but the defendant's story had

not been heard, and, when heard, might have given the case an entirely different aspect. The writer knows from experience on the circuit bench that it is sometimes very difficult for a judge to refrain from making comments on a case during the progress of the trial, and especially where an apparent injustice seems to have been perpetrated; but after a reversal or two, occasioned by this practice, he concluded to go, not to the ant, but to the meek and lowly oyster, to "consider its ways and be wise," and to keep the judicial mouth shut. He commends the example of the silent oyster to all trial judges.

5, 6. The defendant introduced no testimony whatever, leaving the testimony of plaintiff and her witnesses wholly uncontradicted. The witnesses were not impeached, their testimony was reasonable and probable, and, in the absence of any contradiction, the jury was bound to receive it as true and render a verdict accordingly. Had there been any contradictory evidence introduced, so that a question of the preponderance of evidence one way or the other had been presented to the jury, we should be compelled to reverse this case; but, as it now stands, the evidence is all on the side of the plaintiff, and notwithstanding the errors complained of the verdict must stand.

Other errors in the rulings of the court are assigned, but we do not deem them well taken.

The judgment is affirmed.        AFFIRMED.