Argued March 20, decided April 14, 1914.

# KERN v. FELLER.

(140 Pac. 735.)

**Vendor and Purchaser—Validity of Contract—Sale of Town Lot.**

1. Section 3264, L. O. L., providing that any person selling any town-site lot that has been laid out, before the plat thereof has been recorded, shall forfeit $50 for every lot so sold, but imposing no penalty on the vendee, does not prevent the vesting of title in the grantee under such sale.

[As to contracts forbidden under penalties, see note in 25 Am. Rep. 675.]

**Principal and Agent—Authority of Agent—Receiving Payments.**

2. A contract, whereby defendant employs agents to plat land and sell the lots, and agrees to execute a deed to any lot to the purchaser on payment of $50, it being further agreed that the defendant should receive a named sum in specified payments for the entire tract, does not authorize the agents or their assignee to receive any money as defendant's agents, nor require the execution of a deed by defendant till the payment of at least $50 per lot to him.

[As to agency to make sales, whether such includes authority to receive payments and create liabilities, see note in 47 Am. Rep. 518.]

**Principal and Agent—Right of Action—Grounds.**

3. Where defendant employed agents to plat land and sell the lots, and agreed to convey any lot on the payment of $50 by the purchaser, plaintiff, who paid to an assignee of the agents' contract a sum in cash for certain lots, and additional sums in the satisfaction of debts of the assignee and in advertising, is not entitled, on failure or rescission of the contract of sale to him, to recover any portion of the purchase price from defendant, who never received any part thereof.

[As to when brokers become entitled to commissions, see note in 28 Am. St. Rep. 546.]

From Multnomah: FRANK M. CALKINS, Judge.

This is an action by Albert E. Kern against Francis Feller. From a judgment of nonsuit, plaintiff appeals. The facts are fully stated in the opinion of the court.

AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. Thomas O'Day* and *Mr. John M. Haddock.*

For respondent there was a brief with oral arguments by *Mr. John H. McNary* and *Mr. Henry J. Bigger.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

On June 21, 1912, the defendant was the owner of a tract of 200 acres of land in Marion County, which is described in the complaint. On said 21st day of June, 1912, the defendant entered into a written contract with the United Securities Company, a partnership, consisting of B. N. Garrett and H. H. Hoffman. The second and third paragraphs of said contract are as follows.

"Second. That for and in consideration of one dollar ($1.00) cash in hand paid by the agent, receipt of which is acknowledged and confessed by the owner, the owner hereby appoints, constitutes and empowers the agent as his sole and exclusive agent to plat or divide, or subdivide said lands in a town site, with streets and alleys, etc., at the option of the agent, and to offer for sale, and to sell the town lots therein to any one whomsoever, and upon any terms that the agent may see fit; provided, that no lot in said town site shall be sold for less than fifty dollars ($50.00). The owner agrees that upon the payment of fifty dollars (50.00) in cash that he will execute a good and lawful title to the lot purchased to the purchaser thereof.

"Third. It is agreed and warranted by the agent that the owner shall receive the sum of two hundred and twenty-five dollars . ($225.00) per acre for said land, and that the owner shall receive from the sale of said lands, or otherwise, a sum not less than one thousand dollars ($1,000.00) within ninety days from the date of this contract, and an additional sum of one thousand dollars ($1,000.00) within five months, and an additional sum of one thousand dollars ($1,000.00) within six months, an additional sum of three thousand dollars. ($3,000.00) within twelve months, an additional sum of three thousand dollars ($3,000.00) within eighteen months, an additional sum of three thousand dollars ($3,000.00) within twenty-four months, an additional sum of .three thousand dollars ($3,000.00) within thirty months, and the entire balance of the purchase price within three years from the date of this contract, and that when the agent has paid, or caused to be paid, to the owner said sum, the owner will then and thereupon deed to the agent, or to the agent's clients, at the option of the agent, all lands remaining in the said tract not already deeded under the terms of this contract. All deferred payments to bear interest at the rate of six (6) per centum per annum. Said interest payable annually."

After alleging the execution of said contract, the plaintiff alleges that said securities company caused a plat of said lands into lots and blocks to be made, and presented the same to the defendant for dedication on July 10, 1912, and that the defendant and his wife duly executed a dedication for said land, and dedicated to the public use the streets, etc., marked on said plat, and that said proposed town was designated on said plat as Armstrong, Marion County, Oregon. The complaint alleges, also, that said securities company, on September 11, 1912, assigned said contract to the Armstrong Townsite Company, a corporation. The complaint further alleges that said assignment was made with the knowledge and acquiescence of the

defendant, and that the defendant accepted said Armstrong Townsite Company as his agent, under the terms of the contract previously made by the defendant with the securities company, as stated *supra*. The complaint alleges, also, that said Armstrong Townsite Company, as agent of the defendant, on August 24, 1912, sold to the plaintiff lots 13 and 14 in block 34, of said Armstrong for the sum of $1,100, which the plaintiff paid to said company, agent of the defendant, and said agent, designating itself as seller, agreed to cause to be executed to the buyer a good and sufficient warranty deed together with a complete abstract of title to said property; that the deed to said lots was to be furnished as soon as necessary details were completed. The complaint alleges, also, that on September 17, 1912, said Armstrong Townsite Company sold to the plaintiff lots 24, 25, 26, and 27, in block 36 in Armstrong for $2,300, which the plaintiff paid to said agent, and that, in the said contract of sale, it was agreed that a deed was to be issued to the plaintiff, not later than 30 days from the date of said contract of sale. The complaint alleges, also, that the plaintiff, relying upon said contract and upon the fact that a deed would be issued to him, conveying a good and sufficient title, clear of encumbrances, purchased said lots and paid the purchase price therefor, as stated *supra*. The complaint alleges, also, the facts to be that the plaintiff demanded a deed to said lots, to wit, at the time the deed was to be issued to him in accordance with said contract; but that the defendant herein has refused, and does still refuse, to issue a deed to the plaintiff for said lots, or either of them. The complaint alleges, also, that the defendant refused to permit said plat of said proposed town of Armstrong to be filed for record in the office of the county clerk of Marion County; that there is, by reason of the

defendant's refusal to permit said plat to be filed in the office of the county clerk of Marion County, no public record in Marion County, or at all, of the lots, blocks or either of them mentioned in said plat; and that the defendant, or his agent, is unable to show an abstract, designating said property, or any of the lots and blocks in said Armstrong; and that without said plat being filed for record in the office of the County Clerk of Marion County, Oregon, no good and sufficient title to said property can be conveyed to this plaintiff; and that, upon the failure of said defendant to make and execute a deed for the property hereinbefore mentioned, the plaintiff elected to rescind his contract of purchase of said lots and demanded of the defendant the return of the purchase price of said property, to wit, the sum of $3,400, which the defendant has refused, neglected and still refuses to pay; that, by reason of the facts herein alleged, there is due from the defendant to the plaintiff the sum of $3,400, and interest thereon from October 20, 1912. The complaint demands judgment against the defendant for said sum and interest.

The answer of the defendant denies most of the allegations of the complaint and sets up affirmative matter, which was denied by the reply. When the evidence in behalf of the plaintiff was in, on motion of the defendant, the trial court rendered against the plaintiff a judgment of nonsuit, on the ground that the plaintiff's evidence failed to make out a *prima facie* case for the plaintiff.

The evidence shows that on August 24, 1912, the Armstrong Townsite Company, for the alleged consideration of $1,100, entered into a written agreement with the plaintiff, whereby said company agreed to sell and convey, and the plaintiff agreed to purchase, lots 13 and 14 of block 34, of said town of Armstrong.

This agreement recited that the plaintiff had paid said $1,100, and that said contract was executed in lieu of a deed, and that a deed was to be issued as soon as necessary details should be completed, but it does not state what those "details" were. This contract was executed by said company and the plaintiff, and it does not refer to the defendant in any manner. It was executed under the seal of said company, and it does not purport to have been executed by an agent. It was executed before the execution of the assignment by the securities company to the Armstrong Townsite Company, referred to *infra*.

The Armstrong Townsite Company and the defendant on the 17th day of September, 1912, entered into another written contract of the same form as the one described *supra*, by which said company agreed to sell and convey, and the plaintiff agreed to purchase, for the consideration of $2,300, lots 24, 25, 26, and 27 in block 36 of Armstrong. This contract recites that the plaintiff had paid said consideration, and that said contract was given in lieu of a deed, but that a deed was to be issued not later than 30 days from the date of said contract. This contract neither mentions nor refers to the defendant, and it does not purport to have been executed by an agent. Both of said contracts provide that the seller shall cause a good warranty deed to be executed to the buyer for said lots, and also furnish a complete abstract of title, when the buyer has fulfilled all of the conditions of said contracts.

On September 11, 1912, the United Securities Company executed to the Armstrong Townsite Company a written assignment, of which the following is a copy (omitting the date and signatures and names of the witnesses):

"For and in consideration of one ($1.00) dollar and other valuable considerations, to us in hand paid this day (September 11, 1912) by the Armstrong Townsite Company, receipt of which is hereby acknowledged, we, the undersigned B. N. Garrett and H. H. Hoffman, doing business under the firm name and style of United Securities Company, do hereby sell, assign and set over to said Armstrong Townsite Company, an Oregon corporation, all our right, title and interest in and to that certain option and contract of purchase to a certain two hundred (200) acre tract of land from one Francis Feller of Woodburn, Oregon, dated June 21, 1912, and hereby relinquish to said corporation any claim, estate or interest that we or the United Securities Company, may have in the land described and included in said option and contract of purchase, which contract and supplemental agreement is attached hereto, and made a part of this agreement."

Then on the same page is the following:

"This assignment is approved this ―― day of September, A. D. 1912.

"―――――, Owner."

This approval was evidently written with the intention of getting the defendant to sign it, but he did not sign it, and by his answer he denies that said assignment was executed with his knowledge or acquiescence, or that he accepted said Armstrong Townsite Company as his agent.

The evidence shows that the plaintiff made no contract with the defendant, and that he never paid the defendant anything for the lots referred to in the complaint, and that he never demanded of the defendant the execution of the deed. The plaintiff testifies that he never met the defendant. He testifies, also, that he never saw either of the lots referred to, and that he agreed to pay and did pay for six lots in the town site of Armstrong $3,400, or $566.66 per lot, with-

out having seen either of them, and when no plat of the proposed town had been filed for record.

According to the contract that the defendant made with the United Securities Company, he obligated himself to make a conveyance for a lot on the payment of $50 in cash. The defendant claims that he paid more than ten times that amount for each of the six lots mentioned in the complaint, without having seen either of them. The evidence of the plaintiff shows that he is engaged in the printing and publishing business, and that the larger part of what he claims to have paid for said lots was paid by doing printing and advertising for Garrett and Hoffman, or the Armstrong Townsite Company.

The United Securities Company was the partnership name under which Garrett and Hoffman did business. The Armstrong Townsite Company is a corporation, organized after the execution of the contract between the United Securities Company and the defendant, set out *supra,* and the plaintiff claims that the United Securities Company assigned all of its rights and interests in said contract to the Armstrong Townsite Company. The plaintiff testifies (Ev., pp. 12, 13) that he made a contract with Garrett and Hoffman, or the Armstrong Townsite Company, to do advertising for them for the two lots; the purchase price of said lots being $1,100. He says that he did advertising for them on said contract amounting to $796, and that the rest of the $1,100 had not been used. He testifies, also, that he paid Garrett and Hoffman, or the Armstrong Townsite Company, $500 in cash, and that they owed him $250, which he loaned them, and for which they had given him a note, and that he surrendered this note to them on the purchase price of the six lots. While the evidence of the plaintiff is not very clear on this point, we conclude therefrom, and from the

other evidence produced by him, that the plaintiff paid
Garrett and Hoffman or the Armstrong Townsite Com-
pany, of which they were officers, in cash only $500,
and that they owed him for borrowed money for which
they had executed a note for the sum of $250. These
two items aggregate $750. The remainder of the con-
sideration for said lots consisted of what Garrett and
Hoffman and said company owed the plaintiff for
printing or advertising. The plaintiff testifies that
the purchase price of said two lots was $1,100, to be
paid in advertising, and that he paid thereon in ad-
vertising, $796, leaving unpaid on the purchase price
of said two lots $304. He seems still to owe on the
purchase price of said two lots, $304, to be paid in
advertising.

The agreed purchase price of the four lots was
$2,300. According to the evidence of the plaintiff, he
paid the Armstrong Townsite Company on the pur-
chase price of said four lots, in cash $500, and canceled
a debt that said company or its officers owed him for
money loaned, in the sum of $250, and paid the re-
mainder in advertising. The amount paid on the pur-
chase price of said four lots in advertising seems to
have been $1,500.

We are unable to make out, from the evidence, the
exact amount that the plaintiff claims to have paid
for the six lots; but it is approximately as follows:
He paid in cash $500 and canceled an indebtedness for
money loaned in the sum of $250, and paid $2,296 in
advertising, making the aggregate sum paid for the
six lots $3,045. On pages 14 and 15 of the evidence,
the plaintiff testifies that after deducting the part of
the advertising that was unused, as stated *supra,* and
putting the amount that was owing him for money
loaned at $250, the amount that he paid for the six lots
was $3,124.96. We are unable to understand how he

gets that amount; but the exact amount that he claims to have paid is not material, in the view that we take of the case.

Testifying as to what was done with the consideration paid for the said lots, B. N. Garrett says:

"Why, practically all the consideration was used by Mr. Hoffman and myself and the corporation in exploiting and putting this town site before the people. It was practically all of it used for that purpose. The $500 in cash that we received from Mr. Kern was used in paying for bills and various other items that was incurred in the exploiting of the Armstrong Townsite Company, and every cent of it went into the exploitation of the Armstrong Townsite Company."

Thus, the evidence shows that the defendant did not receive any part of the consideration that was paid by the plaintiff for said lots. This witness says that practically the whole of the consideration paid was used by him and Hoffman and the corporation in exploiting the Armstrong Townsite Company, and that every cent of the $500 that was paid in cash was used for that purpose by them. These facts are important, because they show that not a cent of the consideration was paid to or received by the defendant. The large bill for advertising was charged to the Armstrong Townsite Company, or to Garrett and Hoffman, and did not go to the defendant. The $250 debt for money loaned was loaned to said company or to Garrett and Hoffman, and the plaintiff held a note therefor.

The plaintiff testifies that he had no business transactions with the defendant, and that he never even met him. He admits that he knew that the Armstrong Townsite Company, or Garrett and Hoffman, were agents for the defendant, and that he had seen the contract between the defendant and the United Securities Company; but he claims that he did not read all of it. He says that he knew that Garrett and Hoffman

had a contract with the defendant for a deed, and that he relied upon that.

The evidence shows that on September 17, 1912, the defendant conveyed to the Armstrong Townsite Company, by a warranty deed, with other property, the six lots described in the complaint which the plaintiff purchased of that company. Said deed, so made to said company, was executed on the same day that said company sold four of said lots to the plaintiff, as stated in the complaint.

The defendant having conveyed all of said lots to said company as stated *supra,* the title to said lots was not in him after September 17, 1912, and hence he had no power to convey them to the plaintiff. By force of said conveyance, the title to said lots was vested in the Armstrong Townsite Company, and it had power to convey the same to the plaintiff.

1. The fact that the plat of said town had not been filed for record in the office of the county clerk of Marion County did not prevent the vesting of the title to said lots in said company.

Section 3264, L. O. L., provides that, if any person shall sell or offer for sale any townsite lot that has been laid out, until the plat thereof has been recorded, shall forfeit and pay $50 for every lot so sold or offered for sale, to be collected before any court having jurisdiction thereof, in the name of the county. This section does not purport to forbid or make void such a sale. It provides a penalty for selling or offering for sale any lot, but it imposes no penalty upon the vendee for buying any lot. If the statute has directly forbidden the sale of lots before the recording of the plat, a different question would be presented. Our statute is like the Iowa statute on this subject. In that state, sales of lots before the recording of the plat are held to be valid.

In *Watrous & Snouffer* v. *Blair*, 32 Iowa, 58, the syllabus of the case is:

"Section 1027 of the Revision, imposing a penalty upon any person who shall sell or lease any lot in any town, * * until the plat thereof has been duly acknowledged and recorded, does not operate as a prohibition upon the sale itself, but only imposes a penalty upon the seller, and hence the purchase of such lot, the plat of which is not recorded, is not rendered invalid by said section."

In *Mason* v. *Pitt*, 21 Mo. 393, a case where a town lot was sold without the plat having been recorded, the court says:

"But the answer to this whole matter of the plat being unrecorded is that the contract is executed, the title has passed, and the law imposes no penalty on the vendee."

A statute of Ohio provided that, if any proprietor of any town should sell any lot before a map thereof should be recorded, he should forfeit and pay a penalty of $50 for each lot sold. *Strong* v. *Darling*, 9 Ohio, 202, was an action to recover money to be paid for lots, where the plat had not been recorded, and the court passing on that case says:

"It is argued by the defendants that the plaintiff cannot recover upon this covenant, because it violates the act referred to, which is a penal statute. * * We think the facts set up in this case do not bar the plaintiff's action."

The facts set up in that case were that the money sued for was owing for the sale of a lot in a town, and that the plat of said town had not been recorded.

In *Harris* v. *Runnels*, 12 How. 79 (13 L. Ed. 901), a part of the syllabus is:

"Where a statute prohibits an act or annexes a penalty to its commission, it is true that the act is

made unlawful; but it does not follow that the unlawfulness of the act was meant by the legislature to avoid a contract in contravention of it'': See, also, *Bemis* v. *Becker,* 1 Kan. 226.

The defendant's deed of the date of September 17, 1912, vested in the Armstrong Townsite Company the title to the six lots that said company sold to the plaintiff, and it was not thereafter within the power of the defendant to make a conveyance of said lots to this plaintiff. The plat of said town was complete and about to be presented to the County Court of Marion County for approval, and it seems that the defendant brought a suit in the Circuit Court of Marion County against the Armstrong Townsite Company and others to obtain an injunction preventing the presentation of said plat to the County Court of said county for its approval and the filing of said plat in the office of the County Clerk of said county, and a temporary restraining order was granted in said suit. What was the final result of said suit is not shown by the evidence; but the plaintiff is not bound thereby, because he was not made a party to said suit. It is not necessary to decide whether the plaintiff would have the right to have said plat filed of record, or not. The question for decision is whether, under the facts of this case, as shown by the evidence, the plaintiff, under the issues made, is entitled to recover from the defendant what he claims to have paid for said lots.

From the 17th day of September, 1912, the title to said lots was vested in said company. On the day that the defendant conveyed said six lots to said company, said company executed the contract to sell four of them to the plaintiff, and a short time prior thereto said company entered into a contract to sell the other two lots to the plaintiff. According to the evidence, the plaintiff contracted with said company and its

officers, and not with the defendant, and all that the plaintiff paid for said lots was paid to said company and its officers, and by them expended in exploiting said town site. None of it was paid to the defendant. The defendant never received any part thereof.

2. The Armstrong Townsite Company and its officers had no authority to receive, as agents of the defendant, any of the money or advertising which the plaintiff claims to have paid them, and they did not receive the same as his agents. All that was paid them was received by them as vendors of said lots, and spent by them in defraying their expenses. The defendant was not liable for the advertising, or "the exploiting" of the Armstrong Townsite. He did not agree to pay any of the expenses of advertising, or for finding purchasers. He was to be paid by the United Securities Company $45,000 for his 200 acres of land. He agreed that said United Securities Company could sell the lots upon any terms it should see fit, excepting that no lot should be sold for less than $50 in cash, and he agreed that, upon the payment of $50 in cash for any lot, he would execute a good and lawful title to the purchaser therefor.

It is clear, we think, that the defendant was not to make a deed for any lot until $50 in cash was paid therefor, and that such cash payment was required by the contract, as we interpret it, to be made to him. The United Securities Company was not to receive any commission for making sales. This company was to pay the defendant $225 per acre for the 200 acres of land, and, when that sum was paid, that company was entitled to have all of the land remaining unsold conveyed to it. It was to be paid for its work, by receiving the conveyance to it of what remained of the land, after the defendant was paid the $225 per acre. The $225 per acre was to be paid out of the proceeds of the

land "or otherwise." But the defendant was not obliged to convey any lot until he was paid $50 therefor in cash. The plaintiff saw the contract between the defendant and the United Securities Company, and is chargeable with notice of its contents. If the assignment of said contract to the Armstrong Townsite Company was valid, that company took the assignment subject to all the provisions and terms of said contract. Said company could not pay its debts by selling those lots to its creditors. The duty of making a deed and of conveying a lot could, under said contract, be imposed on the defendant only by paying him for it at least $50 in cash.

3. The plaintiff does not claim to have paid in cash more than $500 for said lots, and no part of this was paid to the defendant. All that he claims to have paid in excess of the $500 consisted in debts for advertising and money loaned, which said company and its officers owed him. It was contended, on the argument, that this is an action for money had and received, and we think that it is; but the plaintiff failed to prove the facts essential to sustain such an action. An action for money had and received is an equitable action, and governed by equitable principles to a large extent: 27 Cyc. 849.

27 Cyc. 869, says:

"To sustain an action for money had and received, it must appear that the money in question belonged to the plaintiff; that it was secured by defendant without plaintiff's consent and without giving any valid consideration; or, if with the plaintiff's consent, upon a consideration that has failed. To maintain an action for money had and received, plaintiff must show that the defendant actually received his money, or prove such facts as to raise a fair presumption that he received it."

The same volume, on page 854, says:

"The question, in an action for money had and received, is: To which party does the money in equity, justice and law belong? All that the plaintiff need show is that the defendant holds money which, in equity and good conscience, belongs to him; but, if he fails to show such superior right, he cannot recover."

In this case the evidence shows that the defendant did not receive a cent of the plaintiff's money. All of the money that the plaintiff claims to have paid was paid to the Armstrong Townsite Company, and its officers on a contract between that company and the plaintiff for the sale, by the former to the latter, of the six lots, and said company spent it in paying the debts and expenses of said company and its officers. Neither said company nor its officers had any authority to receive money for the defendant, on the sale of the lots. The defendant conveyed said lots to said company, as stated *supra,* and said company sold them to the plaintiff. The legal title to them appears to be still in said company. We hold that the plaintiff failed to make out a *prima facie* case, and that the court below properly granted a judgment of nonsuit.

The judgment of the court below is affirmed.

AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE and MR. JUSTICE BURNETT concur.