Argued June 9; reversed September 14, 1932

SMITH *v.* RUBEL

(13 P. (2d) 1078)

*Herbert L. Swett,* of Portland (Dey, Hampson & Nelson, of Portland, on the brief), for appellant.

*John W. Kaste,* of Portland, for respondent.

ROSSMAN, J. Preceding the trial the parties agreed upon the facts constituting the foundation of the action and thereupon signed a stipulation to which we shall now refer. August 5, 1930, the defendant owned 40 shares of the Class B capital stock of the Time-O-Stat Controls Company of Elkhart, Indiana. The Class A stock of that corporation was listed on the Chicago Stock Exchange and sold at $25.00 per share. The Class B stock was not listed upon any exchange, and its sale was effected in Chicago, Indianapolis, Minneapolis, Milwaukee and Elkhart in a manner described in the stipulation as "over the counter market," at a price of $10.00 per share. August 5, 1930, a representative of Tucker, Hunter, Dulin &

Company, dealers in investment securities, which maintained offices in several Pacific Coast cities but none in the cities just named, interested the defendant in the purchase of shares of the Shenandoah Company. Without committing himself to buy any of that stock, the defendant authorized Tucker, Hunter, Dulin & Company to sell his 40 shares of Time-O-Stat Controls Company stock at $25.00 per share, expecting to invest the proceeds in Shenandoah stock. Next, he endorsed his certificate in blank and delivered it to the brokers with authority to sell at a price of $25.00 per share, less the commission. The brokerage company was not a member of any stock exchange, and, as we have seen, had no offices in any of the cities where Time-O-Stat stock was sold. Upon receipt of the certificate the brokers delivered it to the Portland office of E. A. Pierce & Company, plaintiff's assignors, which is a partnership maintaining a membership in the Chicago Stock Exchange, and instructed that firm to sell the stock. This employment was without the knowledge of the defendant. Pierce & Company's Portland office at once telegraphed to its Chicago office to sell 40 shares of Class B Time-O-Stat stock at $25.00 per share. We now quote from the stipulation:

"The Chicago office of E. A. Pierce & Company upon receiving said telegraphic instructions, inasmuch as the published quotations of stock sold on said Exchange referred simply to 'Time-O-Stat' without distinguishing between Class A and Class B stock thereof, erroneously assumed that said instructions referred to the stock listed on said Chicago Stock Exchange, to wit: Class A stock, and thereupon sold on the Chicago Stock Exchange 40 shares of Time-O-Stat Controls Company Class A stock at $25.00 per share and immediately notified its Portland office that the said Portland order had been fulfilled."

Upon receipt of that information the Portland office of Pierce & Company paid to Tucker, Hunter, Dulin & Company $993.81, being the full sales price less the commission, and that company thereupon notified the defendant of what had occurred. The defendant then bought 85 shares of Shenandoah stock, paying for it with his credit of $993.81 and $15.87 cash. Upon receipt of the defendant's certificate of 25 shares of Class B Time-O-Stat stock at the Chicago office of Pierce & Company, the mistake was discovered and explanations were made to all interested parties. The individual who had purchased the Time-O-Stat stock agreed to a cancellation of his purchase. Pierce & Company were then advised that after the receipt of the proceeds of the supposed sale the defendant purchased the Shenandoah stock, and that since then his Shenandoah stock had declined in value. Pierce & Company at once (August 28, 1931) offered to pay him an amount equal to the difference in the price of Shenandoah stock at the time of his purchase and its then market value, provided he would return to Pierce & Company the aforementioned $993.81. It also offered that if the defendant would return to them $993.81 they would accept his 85 shares of Shenandoah stock and pay him the full sum which he had paid for it. The defendant declined both offers. We quote again from the stipulation:

"E. A. Pierce & Company has endeavored continuously since the date said mistake was discovered to sell said Time-O-Stat Controls stock at a price of $25.00 per share, but has not been able to effect any sale thereof, and said stock is still in its hands subject to defendant's order, no title to said stock being claimed by E. A. Pierce & Company or by plaintiff herein. The market price of said Class B stock at no time during the years 1930 and 1931 has been as high as $25.00 per share."

E. A. Pierce & Company assigned their claim to the plaintiff.

Briefly stated, it appears from the above that the defendant is still the owner of his 40 shares of Time-O-Stat stock; that it was never worth more than $400.00; that he received $993.81 of E. A. Pierce & Company's money when that firm, through a mistake, believed that it had sold his stock; that after the defendant had been apprised of this error he refused to return the money which had been paid to him; and that the defendant possesses a sum exceeding in amount double the value of his stock and still owns his stock.

An action for money had and received, although an action at law, is governed by equitable principles. *Powder Valley State Bank v. Hudelson,* 74 Or. 191 (144 P. 494); *Kern v. Feller,* 70 Or. 140 (140 P. 735); *Edwards v. Mt. Hood Construction Co.,* 64 Or. 308 (130 P. 49); *Hoxter v. Poppleton,* 9 Or. 481. The action is liberal in form and greatly favored by the courts. *Maurice Allen v. Mendelsohn & Son,* 207 Ala. 527 (93 So. 416, 31 A. L. R. 1063). The generally accepted test which determines whether a recovery may be had is whether the defendant, in equity and good conscience, is entitled to retain the money to which the plaintiff asserts claim. *Powder Valley State Bank v. Hudelson,* supra; *Kern v. Feller,* supra; *Edwards v. Mt. Hood Construction Co.,* supra; *Peterson v. Foss,* 12 Or. 81 (6 P. 397); *Hoxter v. Poppleton,* supra. As a general rule, a payment made under a mistake of fact which induces the belief that the other party is entitled to receive the payment when, in fact, the sum is neither legally nor morally due to him, may be recovered, provided the payment has not caused such a change in the position of the payee that it would be unjust to re-

quire the refund. *Security Savings & Trust Co. v. King,* 69 Or. 228 (138 P. 465); *Scott v. Ford,* 52 Or. 288 (97 P. 99); *Thorsen v. Hooper,* 50 Or. 497 (93 P. 361); *Scott v. Ford,* 45 Or. 531 (78 P. 742, 80 P. 899, 68 L. R. A. 469); 48 C. J., Payment, p. 759, § 318. The right to the refund is based upon a promise to return which the law implies, irrespective of any actual promise, and even against the refusal of the wrongful party to make it. *Hibbs v. First National Bank,* 133 Va. 94 (112 S. E. 669, 25 A. L. R. 120). The payer's failure to exercise ordinary care to avoid mistakes will not defeat his right to recovery in the absence of a change of condition upon the part of the payee. It is sometimes said that neglect to bar recovery must consist of intentional failure to investigate. *Security Savings & Trust Co. v. King,* supra; *Scott v. Ford,* and 21 R. C. L., Payment, p. 167, § 196. An error of fact is established when it appears that some fact which the payer supposed existed really did not exist. *Scott v. Ford,* supra.

■ It will be observed that when Tucker, Hunter, Dulin & Company handed to the defendant the sum of $993.81 received from Pierce & Company, they erroneously believed that Pierce & Company had sold the defendant's Time-O-Stat stock. However, the defendant's stock had not been sold. Tucker, Hunter, Dulin & Company's mistake was preceded by the mistake of the Chicago employee of Pierce & Company who mistakenly believed that the telegram from the Portland office authorized the sale of 40 shares of Class A stock. The explanation of this error made in the stipulation of facts reveals it as not of a gross character but of the type which clerks would ordinarily classify as a slip-up. If the failure of the Chicago clerk to assure himself that the instructions directed the sale of Class A stock

by making inquiry of the Portland office renders his neglect nonremediable, then most, mercantile mistakes would be proscribed because the test would be hindsight rather than foresight. We conclude that the mistake revealed by the evidence was of the type that is subject to redress in an action of this character.

■ The defendant, after pointing out that he did not appoint Pierce & Company his agents, argues that, therefore, no privity existed between him and the plaintiff's assignors. However, privity of the contractual type need not exist between the parties. Either express or implied privity will suffice. The equitable principle that one who possesses money which ex equo et bono belongs to another should return it, in the absence of a contract modifying the general liability, implies the promise to return which, in turn, supplies the privity. First National Bank v. Hovey, 34 Or. 162 (55 P. 535); Scott v. Ford, supra; 2 R. C. L., Assumpsit, p. 780, § 35; 41 C. J., Money Received, p. 38, § 18; annotation 26 Ann. Cas. 477. Thus, the needed promise to create the privity is present in the case under consideration.

■ The defendant argues that an action of this character can not be maintained if the possessor used no deceit or unfairness in obtaining the money even though the payer parted with his money under the stress of a mistake. It is true that an occasional excerpt may be lifted from a case which, in the absence of its qualifying surroundings, lends some support to this claim. However, we believe that the correct principle of law is stated by the court in *Ancient Order of United Workmen v. Towne,* 136 Minn. 72 (161 N. W. 403, L. R. A. 1917E, 345), wherein the court said: "The test is whether the defendant has a right to retain the

money, not whether he acquired possession honestly or in good faith. If the money belongs to plaintiff and defendant can show no legal or equitable right to retain it, he ought in equity and good conscience to pay it over.''

The defendant contends that when he authorized Tucker, Hunter, Dulin & Company to sell his Time-O-Stat stock, trust and confidence was of necessity reposed in the agent which rendered it impossible for the latter to delegate its duty to Pierce & Company. If that is true, it then follows that none of Pierce & Company's subsequent actions bound the defendant, and, therefore, Pierce & Company's right to the proceeds of the supposed sale becomes the more clearly established. But we need not explore that field because the facts are that no sale of the defendant's stock was made, and the attempted delegated authority was not exercised. Pierce & Company are in a position to establish their rights to the $993.81 without being required to depend upon the delegated authority. The simple truth of the matter is that they paid the defendant that sum of money without having received any consideration whatever for it.

As we have previously observed, the payment cannot be recovered if it caused such a change in the position of the defendant that it would now be unjust to require him to refund. We do not understand that any contention is advanced that a change in position has occurred. The answer alleges none. It is true that the stipulated facts mention a decline in the value of Shenandoah stock, but they do not indicate the extent of it. There is no statement in the stipulation that the defendant would not have purchased the Shenandoah stock but for the payment from Pierce & Company.

The stipulated facts indicate that when the defendant was afforded an opportunity to sell his Shenandoah stock to Pierce & Company for the price that he had paid for it, on condition that he return the $993.81, he declined to do so. The above being the facts, we are of the opinion that change of condition is not an issue in this case.

It follows from the foregoing that the judgment of the circuit court is reversed, and the cause is remanded to enter a judgment in favor of the plaintiff.

BEAN, C. J., BROWN and BELT, JJ., concur.