Hart, J.
The position taken by the Court of Appeals in this case is tersely stated as follows in its opinion:
‘ i * * » bank, by requesting that payment of these invoices be made to it, impliedly, although innocently represented to Firestone that it held, by assignment from Stan Wood, a valid obligation of Firestone, whereas in truth, and in fact, such obligation was false, fictitious. and fraudulent. The bank lost no rights against Stan Wood, for all it had was the promise of Stan Wood to pay the loan.”
The bank in answer to that statement of the court claims that when a bank, having discounted a bill of exchange with a bill of lading attached, presents it to a buyer for payment, the bank does not warrant the genuineness of the security, and that the bank is a bona fide purchaser for value without notice and, therefore, the general rule of restitution does not apply. In effect, the bank applies this argument to an assignment of accounts receivable.
Since a great variety of factual circumstances enter into the solution of questions relating to the recovery of payments made under mistake of fact, the court must always keep in mind the exact question to bo decided in each given case, because a slight change in the facts may make inapplicable well established rules.
*430 At the outset it will he profitable to describe and define, if possible, the nature and limits of the transaction or transactions involved, so we can properly apply legal rules. There is here involved the use of false invoices accompanied by forged straight bills of lading purporting to cover goods represented by such invoices, and the assignment by a third party, a purported vendor, of purported accounts receivable, arising from a fraudulent transaction, to a bank as security for a loan from the bank, and of a check from the purported vendee to the bank supposedly in payment for the merchandise represented by the invoices. The transaction here, so far as it related to the invoices and the assignment by Stan Wood to the bank of accounts receivable as security, and the execution and delivery of a check from Firestone to the bank, were not governed by the law of negotiable instruments, with the result that neither party enjoys any advantage or immunity as a bona fide holder of a negotiable instrument for value and without notice. However, in the course of this opinion, in order to apply the appropriate legal principles, it will be necessary to refer to and discuss principles and cases relating to negotiable instruments law.
The accounts receivable were not purchased outright by the bank but, as alleged by it in its amended answer, were pledged or assigned to it as security for its loans to Stan Wood with the right to collect the purported debt of Firestone to Stan Wood, supposed to be represented by the invoices, and to apply the proceeds to the debt of Stan Wood to the bank.- It paid no money in advance to Stan Wood for the assignment of the accounts receivable and therefore such accounts receivable are held by it only as collateral security for Stan Wood’s loan.
Incidentally, the proceeds of the first check of $6,831 *431 paid by Firestone to Stan Wood for invoice No. 1868 and indorsed and paid over to tbe bank by Stan Wood is no longer in controversy in this case. The Court of Appeals held as to that check, and properly so, that the bank was a holder in due course for value.
In 29 Ohio Jurisprudence, 958, Section 185, it is stated:
“In Ohio, the courts maintain that the word ‘assign’ has a definite and distinct meaning, and a transfer by assignment is quite different from a contract of indorsement. Apparently for this reason the rule in Ohio is that the assignee of a negotiable instrument stands in the shoes of the assignor. He has the same title that the assignor had — no better, no worse — and if the assignor could not recover, neither can the assignee. He is not entitled to the protection given to a bona fide indorsee of notes in due course, who takes them without any knowledge of defects, and therefore is not a holder in due course.”
Although there is a conflict of authority on the question whether the original payee of a check may be a holder in due course, the better rule supported by sound legal theory is that such payee can not be a bona fide holder in due course. In other Avords, where the payment is made by the obligor’s check directly to the original payee and such check does not pass through the hands of an intermediary, such payee is not a bona fide holder thereof in due course. As one writer puts it, “while the instrument is still in the hands of the original payee, the ‘courier’ has not started on its career without luggage.” Practically all the courts agree that to be such a holder, the payee must become such by negotiation, and the better view is that the term, “negotiation,” means a transfer of the instrument from the original payee. 8 American Jurisprudence, 112, Section 376; United States v. Hill *432 (Ohio), 57 F. Supp., 934; Builders Lime & Cement Co. v. Weimer, 170 Iowa, 444, 151 N. W., 100, Ann. Cas. 1917C, 1174; Williamson v. Payne, 300 Ky., 161, 188 S. W. (2d), 96; Gannon v. Bronston, 246 Ky., 612, 55 S. W. (2d), 358, 86 A. L. R., 324; Long v. Mason, 273 Mo., 266, 200 S. W., 1062; First Nat. Bank v. Larson, 53 S. D., 262, 220 N. W., 506, 68 A. L. R., 940; annotations, 15 A. L. R., 437, 21 A. L. R., 1365, 26 A. L. R., 769, 32 A. L. R., 289, 68 A. L. R., 962, 97 A. L. R., 1215, 142 A. L. R., 489, and 169 A. L. R., 1455.
It seems clear to the court that the check made and delivered by Firestone to the bank for the purpose of paying for the purported invoices held by the bank was “issued” direct to the bank and was not “negotiated” to it, so that it is not with reference to the check “a holder in due course.” See Sections 8135 and 8157, General Code. As to this check, no third party was in any respect involved. One reason for the rule that the original payee of a check is not a holder in due course is that, having dealt directly with the payer, such payee has full knowledge of the facts giving rise to the cause of action.
This is not a case of negotiable paper transferred to a bank for collection or for discount, but an assignment of fictitious accounts receivable as security for a loan by the bank, supported by false invoices and forged straight bills of lading which are in form nonnegotiable, nor is it a case where a bank mistakingly bought or discounted a forged negotiable instrument. In such cases the law holds that the drawee must know the signature of the drawer and pays it at its peril.
The alleged negligence of Firestone, in paying the money to the bank before it (Firestone) had checked on the claimed shipment to it of sleds by Stan Wood, in failing to discover the fraud, and in failing to give notice thereof to the bank within a reasonable time, as a defense in this action, will hereinafter be discussed.
*433 In this action Firestone seeks to recover the money paid by it directly to the bank under the mistaken supposition that it (Firestone) was indebted to Stan Wood which had assigned the fictitious credit due it to the bank. The general rule is, subject to exceptions hereinafter noted, that money paid under the mistaken supposition of the existence of a specific fact which would entitle the payee to the money, which money would not have been paid had it been known to the payer that the fact did not exist, may be recovered. Ellis & Morton v. Ohio Life Ins. & Trust Co., 4 Ohio St., 628, 662, 64 Am. Dec., 610.
Where money is paid by mistake, neither party being-in fault, the party paying the money may recover it as money paid without consideration and, therefore, had and received by the payee to the use of the payer. Espy v. Bank of Cincinnati, 18 Wall., 604, 21 L. Ed., 947; Meyer v. Richards, 163 U. S., 385, 406, 410, 41 L. Ed., 199, 16 S. Ct., 1148.
It is the general rule “that money paid to another under the influence of a mistake of fact, that is, on the mistaken supposition of the existence of a specific fact which would entitle the other to the money, which would not have been paid if it had been known to the payer that the fact was otherwise, may be recovered, provided the payment has not caused such a change in the position of the payee that it would be unjust to require a refund.” 40 American Jurisprudence, 844, Section 187.
“* * * in the absence of a change of position upon the part of the payee [Smith v. Rubel, 140 Ore., 422, 13 P. (2d), 1078, 87 A. L. R., 644], the failure of one paying money to another under a mistake of fact to use ordinary care to avoid such mistake will not defeat his right to recover it back in an action for money had and received.” 40 American Jurisprudence, 848, 852, Sections 194, 201, and cases cited.
*434 However, this general rule is modified in certain cases to conform to equitable principles which must be applied.
“The generally accepted test which determines whether a recovery may be had is whether the defendant, in equity and good conscience, is entitled to retain the money to which the plaintiff asserts claim. ’ ’ Smith v. Rubel, supra.
The fact that one to whom money was paid by mistake used no deceit or unfairness in obtaining it, but acted in good faith, will not preclude recovery in an action for money had and received. Smith v. Rubel, supra; Grand Lodge v. Towne, 136 Minn., 72, 161 N. W., 403, 405, L. R. A., 1917E, 344. In the latter case the court said:
“Defendant through mistake, obtained possession of plaintiff’s money. There was both a plain mutual mistake, and a want or failure of consideration. It is entirely immaterial that defendant honestly believed he was entitled to the money, or that he was guilty of no fraud or duress in obtaining possession of it. * * * The test is whether defendant has a right to retain the money, not whether he acquired possession honestly or in good faith. If the money belongs to plaintiff and defendant can show no legal or equitable right to retain it, he ought in equity and good conscience, to pay it over.”
“Recovery back of payments made under mistake of fact is not, as a matter of law, defeated by the failure of the payer to exercise ordinary care to avoid the mistake, but his negligence is a relevant factor in determining whether it is equitable to allow recovery.” Annotation, 169 A. L. R., 1427; Restatement of the Law of Restitution, Sections 15 and 16.
We next consider what the responsibilities of the payee are toward the payer where the former obtains payment under a mistake of fact, the failure to meet *435 which will estop him to make defenses against a claim of the payer for repayment. In general, the same necessities of business which require the drawee or payer to know the signature of the drawer or the obligation to make the payment require the one who originates a purported obligation to take the proper precautions to learn whether the purported claim or demand which he is presenting to the payer for payment is genuine, and if he, through indifference or negligence, assists, though innocently, in the fraud or mistake which induces the payment, he will not be permitted to retain the proceeds of the payment made by the payer whose sole fault was that he did not discover the fraud or mistake before the payment was made. Ellis & Morton v. Ohio Life Ins. & Trust Co., supra; Farmers National Bank v. Farmers & Trade Bank, 159 Ky., 141, 166 S. W., 986, L. R. A., 1915A, 77; First National Bank v. First National Bank, 151 Mass., 280, 24 N. E., 44, 21 Am. St. Rep., 450; First National Bank v. State Bank, 22 Neb., 769, 36 N. W., 289, 3 Am. St. Rep., 294. See 62 Yale Law Journal, 417, 438.
A typical case is Newberry Savings Bank v. Bank of Columbia, 91 S. C., 294, 298, where the payee of a forged check cashed it for a stranger without any attempt to identify him and impliedly represented to the drawee that it was genuine. The drawee upon discovery of the forgery brought suit to recover the money paid.
The court said:
“The person or bank to whom the money is paid, in such circumstances, receives the money of another on the faith of an untrue representation that he has dealt with and received the check from the person whose name is signed to it. The rule that a bank should know the signature of its customers is not available to one who represents to the bank that he holds in his hand the cheek of the customer, without having *436 taken precautions to ascertain the identity of the person with whom he was dealing. The law is thus stated in Ford v. Peoples Bank, 74 S. C., 180, 54 S. E., 204, 10 L. R. A. (N. S.), 63n, quoting from National Bank v. Bangs, 106 Mass., 441: ‘To entitle the holder to retain money obtained by a forgery, he should be able to maintain that the whole responsibility of determining the validity of the signature was placed upon the drawee and that the negligence of the drawee was not lessened and that he was hot lulled into a false security by any disregard of duty on his (the holder’s) own part, or by the failure of any precaution from which his implied assertion in presenting the check as a sufficient voucher the drawee had a right to believe he had taken.’ This case is much stronger in favor of the drawee bank than the Ford case, for there the bank which received the money did not take the draft from the person who signed it, but from an indorsee in the usual course of business.” See First National Bank v. Brule National Bank, 38 S. D., 396, 161 N. W., 616, 12 A. L. R., 1079; annotations, 12 A. L. R., 1098, and 121 A. L. R., 1058.
To entitle the one to whom payment is made to retain as against the drawee the amount received, he must be able to show that the whole responsibility of determining the validity of the signature was upon the drawee, and that the negligence of such drawee was not lessened by any disregard of duty on the part of the holder, or by failure of any precaution which, from his implied assertion in presenting the check as a sufficient voucher, the drawee had the right to believe the holder had taken. Ellis & Morton v. Ohio Life Ins. & Trust Co., supra; Ford & Co. v. People’s Bank of Orangeburg, supra; First National Bank v. First National Bank, supra; American Express Co. v. State Natl. Bank, 27 Okla., 824, 113 P., *437 711, 33 L. R. A. (N. S.), 188; Canadian Bank of Commerce v. Bingham, 30 Wash., 484, 71 P., 43; P. & H. Finance Co. v. First State Bank, 185 Okla., 558, 94 P. (2d), 894.
The court, in the Ellis & Morton case, said:
“To entitle the holder to retain money obtained by mistake upon a forged instrument, he must occupy the vantage ground, by putting the drawee alone in the wrong; and he must be able truthfully to assert that he put the whole responsibility upon the drawee, and relied upon him to decide, and that the mistake arising from his negligence can not now be corrected without placing the holder in a worse position than though payment had been refused. If the holder can not say this, and especially if the failure to detect the forgery, and consequent loss, can be traced to his own disregard of duty, in negligently omitting to exercise some precaution which he had undertaken to perform, he fails to establish a superior equity to the money, and can not with a good conscience retain it. To allow him to do so, would be to permit him to take advantage of his own wrong, and to pervert a rule, designed for his protection against the negligence of the drawee, into one for doing injustice to him.”
Another rule which frequently enters into cases involving the recovery of payment made through mistake of fact and which frequently determines the end result of such cases is that if a payee receiving payment under a mistake of fact has, in good faith, changed his position or disbursed the money to another before he has received notice from the payer of the fraud or mistake, a recovery may not be had against him. Ellis & Morton v. Ohio Life Ins. & Trust Co., supra. See 12 A. L. R., 1105. Money paid under a mistake of fact can not be recovered back where the payment has caused such a change of position of the *438 payee that it would he unjust' to require him to refund it. Hibbs v. First National Bank, 133 Va., 94, 112 S. E., 669, 25 A. L. R., 120.
If, in a payer’s action against the payee to recover money paid through mistake of fact, it is shown that after ’the payment the payee in good faith changed his position so that he no longer has possession of the money or would be in a worse position if he was required to refund it than of the payer had refused to pay the demand, to such extent the payee is exonerated from repayment.
These rules as between the payer and payee, as they relate to the care and good faith of each, are subject to another rule affecting the right of the payer to recover, dependent upon the situation of the payee arising after the payment is made because of a failure on the part of the payer to promptly notify the payee of the fraud or mistake which induced the payment. Even where negligence on the part of the one receiving the proceeds has been established so as to entitle the payer to recover the proceeds, conduct of the payer may again intervene to prevent recovery. Notwithstanding the negligence of a payee in receiving payment under a mistake of fact, he is entitled to receive reasonably prompt notice of the fraud or mistake from the payer so as to enable him to enforce whatever rights he may have against other persons to whom he may be entitled to look for reimbursement, and if the payer is negligent in this respect he may be denied a recovery of his money. See 12 A. L. R., 1108. Whether there was such unreasonable delay in giving notice is ordinarily a question of fact for the jury.
However, the right of the payer to recover from the payee will not be defeated by any delay in giving notice of the fraud or mistake inducing the payment, unless it is shown that the delay resulted itt a change of condi *439 tion or position upon the part of the payee. See First State Bank & Trust Co. v. First Natl. Bank, 314 Ill., 269, 145 N. E., 382.
An examination of the cases will show that in all the well considered adjudications, recognition, tacit or implied, is given to these principles. Their ultimate analysis amounts to this: A payer, even if negligent in making payment under a mistake of fact, may recover if his act has not resulted in a change in the position of the innocent payee to his detriment.
Applying these principles to the facts of the instant case, it is proper to first inquire as to what extent, if any, the payment by Firestone was made as a result of its own negligence and whether such negligence, if any, would preclude recovery.
Firestone made the payment in advance of the delivery of the sleds to it without knowing, as a matter of fact, whether it was indebted to Stan Wood or to Stan Wood’s assignee, the bank, for the sleds. The undisputed evidence is that the prompt payment for invoices by Firestone before the receipt of merchandise by it was a regular practice in the business of that company, required by its suppliers of merchandise and was done also for the purpose of taking advantage of discounts. Firestone knew that Stan Wood was under contract to furnish it sleds, and that it would be indebted to Stan Wood for sleds when manufactured and delivered, but Firestone was charged with no duty to detect the forgery of the bills of lading delivered to it, at least indirectly, by its payee, the bank. On this phase of the case, it is sufficient to suggest that the bank was in no position to complain of the prompt payment for the invoices, in view of the fact that such payment was made to it at its demand upon the same information which was available to Firestone. Under the circumstances, this court takes the view that Fire *440 stone was not guilty of any negligence which would preclude its recovery on this ground.
On the other hand, the bank clearly induced the mistake. Even though the delivery of the bills of lading to Firestone did not warrant that they were genuine, such delivery was a representation that these papers were on their face all they purported to be and was for the purpose of inducing payment. The letter which the bank wrote to Firestone directing the latter to pay it instead of Stan Wood was an implied representation that Stan Wood had delivered goods in transit to Firestone and that there was a bona fide indebtedness of Firestone to the bank as assignee, which, it is agreed, induced Firestone to make the payment. Furthermore, the bank by letter requested Stan Wood to write Firestone directing it to pay the bank instead of Stan Wood, and thereby caused Stan Wood to make a similar representation to Firestone.
Although there was a duty upon both Firestone and the bank to avoid mistake in the páyment, the greater responsibility in this regard was upon the bank which dealt with Stan Wood as its financial customer and which delivered his forged bills of lading to Firestone, which up to that time knew nothing of the state of its indebtedness, if any, to Stan Wood. The bank by such delivery made a false representation to Firestone of a material fact, although it was ignorant of its falsity. Under such circumstances there is a clear basis for recovery of the money paid under mistake of fact.
The next question is whether there was such change of position on the part of the bank as to preclude recovery of the money paid. Does the bank still enjoy the benefit of the payment or is it left in worse position than if payment had been refused?
The Court of Appeals held that Firestone was entitled to recover from the bank the full amount of the *441 latter’s check to the former dated November 29, 1946, and in the sum of $19,148.66. The undisputed testimony is that the bank applied approximately 80 per cent of that amount or $15,473.66 to its Stan Wood loans and the balance of $3,675 to the deposit account of Stan Wood in the bank, which money so deposited was withdrawn by Stan Wood December 7,1946. This court is of the opinion that the position of the bank was changed before the discovery of the mistake by the amount of the deposit to Stan Wood’s account and so withdrawn by him, so that the judgment against the bank in this case should be modified and entered for the sum of $15,473.66 and interest from the date of payment. The bank, in applying that amount to its loans, is in no worse condition than it would have been if the payment had been refused.
The bank makes the claim that Firestone negligently failed to notify it until April 30, 1947, that Firestone had not received the sleds for which payment had been made, and by reason of such delay the bank was deprived of its rights in pursuing Stan Wood and recovering from it its loss. Although this defense was made in the amended answer, the bank offered no evidence that Stan Wood was solvent during the period between the date of payment and the date of such notification, or that the bank could have in any manner recovered its loss from Stan Wood except for such delay, an issue as to which the burden was upon the bank. It does appear from the record that Stan Wood was adjudicated a bankrupt on February 7, 1947, which fact remitted the bank, from that date, to recover from the estate, and that no dividend was paid to unsecured creditors.
From the state of the record on this issue, we decide that Firestone was not precluded from recovery because of this alleged defense.
*442 The judgment of the Court of Appeals is modified, and, as modified, is affirmed.

Judgment modified and, as modified, affirmed.

Weygandt, C. J., Matthias, Zimmerman and Stewart, JJ., concur.