## GENERAL MOTORS CORPORATION *v.* ENTERPRISE HEAT & POWER COMPANY.

1. PAYMENT—MISTAKE OF FACT—CHANGE IN POSITION OF PAYEE.

    Generally, a payment made under a mistake of fact which induces a belief that the other party is entitled to receive the payment when, in fact, the sum is neither legally nor morally due to him, may be recovered, provided the payment has not caused such a change in the position of the payee that it would be unjust to require the refund.

2. SAME—MISTAKE OF FACT—REFUND—IMPLIED PROMISE.

    The right to a refund of money paid under a mistake of fact is based upon a promise to return which the law implies irrespective of any actual promise and even against the refusal of the wrongful party to make it.

3. SAME—MISTAKE OF FACT—NEGLIGENCE.

    The failure to exercise ordinary care to avoid mistakes by party who has made a payment under a mistake of fact will not bar his right to recovery in the absence of a change of condition upon the part of the payee unless his neglect is such as to constitute an intentional failure to investigate.

4. SAME—MISTAKE OF FACT.

    An error of fact in the making of a payment of money is established when it appears that some material fact which the payer supposed to exist really did not exist.

5. SAME—MISTAKE OF FACT.

    Payments made by reason of a mistake or ignorance of a material fact are regarded as involuntarily made.

6. CONTRACTS—MODIFICATION OF ORIGINAL AGREEMENT—OFFER AND ACCEPTANCE.

    Contractor's letter to owner, modifying quotation of prices originally agreed upon for work to be done, which constituted an offer that was accepted by the owners became a contract between the parties.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 40 Am Jur, Payment § 187.
[3] 40 Am Jur, Payment § 194.
[4] 40 Am Jur, Payment § 189.
[5] 40 Am Jur, Payment § 161 *et seq.*

7. PAYMENT—OVERPAYMENT—REVISED CONTRACT—MISTAKE OF FACT
    —CONSIDERATION.

> Plaintiff owner which had made a contract and a revised contract
> with defendant for the installation of an underground fuel
> network and made a payment under the revised contract instead
> of receiving a net credit to which it was entitled *held,* entitled to
> recover entire overpayment as having been made under a mutual
> mistake of fact as found by trial court, where there was no
> consideration for the overpayment.

Appeal from Wayne; Culehan (Miles N.), J. Submitted October 8, 1957. (Docket No. 2, Calendar No. 47,052.) Decided November 26, 1957. Rehearing denied December 23, 1957. Reconsideration denied March 4, 1958.

Action by General Motors Corporation (Oldsmobile Division), a corporation, against Enterprise Heat & Power Co., Inc., a corporation, to recover sums mistakenly overpaid on construction contract. Judgment for plaintiff. Defendant appeals. Affirmed.

*Henry M. Hogan* (*William J. Oldani* and *George W. Coombe, Jr.,* of counsel), for plaintiff.

*Riseman, Lemke & Piotrowski,* for defendant.

SHARPE, J. This cause arises as the result of a claimed overpayment to defendant company of $9,465 under a contract providing for the installation of an underground fuel network for plaintiff company. The essential facts are not in dispute.

In the fall of 1949, plaintiff company issued to contractors and materialmen requests for quotations for labor and materials to install underground network of storage tanks for gasoline and other fluids required in assembly plant operation. Defendant company made a bid for such work in the amount of $99,318. The bid was accepted by plaintiff and a purchase order was issued in September, 1949.

During the course of the work the parties entered into several alteration agreements whereby the original contract was modified. The revised contract price was $109,018.21. This amount was paid by plaintiff. The price should have been $99,553.21, which resulted in an overpayment of $9,465. Exhibit 13 furnished by defendant was an offer that was accepted by plaintiff for a revision of the contract and reads in part as follows:

"November 5, 1949

"Oldsmobile Division
General Motors Corporation
Lansing 21, Michigan
  "Attn: Mr. Fred A. Wiles
  "Re: Bulletin No. 1—Olds Job #0-49-238
*"Gentlemen:*
  "In answer to your recent letter of November 4, 1949, we are pleased to submit the following revised quotation as requested in the subject bulletin:
  "Item #1—(Revise item #10 of original job #0-49-238.)

| | | |
|---|---:|---:|
| "As per original quotation (Item #10) | $1,126 | |
| "Less: Credit for 2 Neptune meters | 529 | |
| Balance: | | $597 |
| "Add: Additional labor and material cost for installing 2 proportioner meters | | 287 |
| Total: | | $884 |

  "Item #2—(Revise item #12 of original job #0-49-238.)

| | | |
|---|---:|---:|
| "As per original quotation (Item #12) | $2,531 | |
| "Less: Credit for proportioner meters | 1,315 | |
| Balance: | | $1,216 |

  "(No additional labor and material charge on this item.)

"Page No. 2                    November 5, 1949
"Item #3—(Revise item #13 of
   original job #0–49–238.)
"As per original quotation (Item
   #13) ........................ $3,098
"Less: Credit for 4 Neptune meters   1,058
                          Balance:        $2,040
"Add: Additional labor and mate-
   rial cost for installing propor-
   tioner meters .................       2,926

                          Total:        $4,966
"Item #4—(Revise item #14 of
   original job #0–49–238.)
"As per original quotation (Item
   #14) ........................ $1,391
"Less:   Credit for 2 Neptune
   meters ........................       529
                          Balance:         $862
"Add: Additional labor and ma-
   terial cost for installing 2 pro-
   portioner meters ..............       264

                          Total:        $1,126
"Item #5—(Revise item #15 of
   original job #0–49–238.)
"As per original quotation (Item
   #15) ........................ $1,319
"Less:   Credit for Lincoln meters   657
                          Balance:         $662
"(No additional labor and material
   charge on this item.)
"We wish to advise that the above quoted prices
include the installation of (Proportioner meters fur-
nished by Oldsmobile) sufficient meters to dispense
the quantities required and specified in your original
request for quotation.

                    "Yours very truly
                       "ENTERPRISE HEAT AND POWER
                          COMPANY, INC.
                       "R. E. JOHNSON, ENGR."

An analysis of this revised offer clearly shows a reduction from the original contract price in the amount of $611.

Exhibit 33 reads as follows:

"Analysis of Enterprise Heat & Power Quotation November 5, 1949, covering contract revisions specified in Bulletin No. 1—Job No. 0–49–238

| Item Number | Contract Amount | Credit to Olds | Added Charge to Olds | Net Credit to Olds | Revised Contract Amount |
|---|---|---|---|---|---|
| 1 (10) .. | $1,126 | $529 | $287 | $242 | $884 |
| 2 (12) .. | 2,531 | 1,315 | None | 1,315 | 1,216 |
| 3 (13) .. | 3,098 | 1,058 | 2,926 | 1,868* | 4,966 |
| 4 (14) .. | 1,391 | 529 | 264 | 265 | 1,126 |
| 5 (15) ..·. | 1,319 | 657 | None | 657 | 662 |
| Totals .. | $9,465 | $4,088 | $3,477 | $611 | $8,854" |

"(*Additional charge to Olds, appeared in red on original.)"

This exhibit clearly shows that plaintiff company was entitled to a credit of $611 and that the revised contract amount was $8,854 instead of $9,465.

The cause came on for trial, and at its conclusion the court entered judgment in favor of plaintiff in the sum of $9,465 with interest.

Defendant appeals and urges that they submitted a bid to plaintiff for the installation of certain underground fuel network; that such bid was investigated by plaintiff's officers, and that it is now too late to claim a mutual mistake. Defendant also urges that when money has been paid with full knowledge of the facts, it cannot be recovered on the ground that the payment was made under a misapprehension of the legal rights of the person paying.

In coming to our conclusion in this cause we have in mind that there was no fraud involved and that both parties had ample opportunity to examine exhibit 13 prior to the making and acceptance of the

overpayment. The general rule relative to the right to recover money paid through a mistake of fact is well stated in *Smith* v. *Rubel,* 140 Or 422, 426, 427 (13 P2d 1078, 87 ALR 644), where it was said:

"As a general rule, a payment made under a mistake of fact which induces the belief that the other party is entitled to receive the payment when, in fact, the sum is neither legally nor morally due to him, may be recovered, provided the payment has not caused such a change in the position of the payee that it would be unjust to require the refund. *Security Savings & Trust Co.* v. *King,* 69 Or 228 (138 P 465); *Scott* v. *Ford,* 52 Or 288 (97 P 99); *Thorsen* v. *Hooper,* 50 Or 497 (93 P 361); *Scott* v. *Ford,* 45 Or 531 (78 P 742, 80 P 899, 68 LRA 469); 48 CJ, Payment, § 318, p 759. The right to the refund is based upon a promise to return which the law implies, irrespective of any actual promise, and even against the refusal of the wrongful party to make it. *Hibbs* v. *First National Bank of Alexandria,* 133 Va 94 (112 SE 669, 25 ALR 120). The payer's failure to exercise ordinary care to avoid mistakes will not defeat his right to recovery in the absence of a change of condition upon the part of the payee. It is sometimes said that neglect to bar recovery must consist of intentional failure to investigate. *Security Savings & Trust Co.* v. *King, supra; Scott* v. *Ford,* and 21 RCL, Payment, § 196, p 167. An error of fact is established when it appears that some fact which the payer supposed existed really did not exist. *Scott* v. *Ford, supra."*

Michigan has generally followed this rule. In *Walker* v. *Conant,* 65 Mich 194, 197, 198, we said:

"The rule is general that money paid under a mistake of material facts may be recovered back, although there was negligence on the part of the person making the payment; but this rule is subject to the qualification that the payment cannot be recalled when the situation of the party receiving the

money has been changed in consequence of the payment, and it would be inequitable to allow a recovery."

In *Pingree* v. *Mutual Gas Co.,* 107 Mich 156, 159, 160, we said:

"Payments made by reason of a mistake or ignorance of a material fact are regarded as involuntarily made. Ignorance of a fact may be equivalent to a mistake of fact."

In *State Savings Bank of Ann Arbor* v. *Buhl,* 129 Mich 193, 197 (56 LRA 944), we said:

"While it may be difficult to find a case on all fours with this, it may be said the courts almost unanimously now hold that, although the mistake of facts is caused by the negligence of one party, that party is not precluded thereby from availing himself of the mistake if the other party can be relieved of any prejudice caused thereby."

See, also, *Couper* v. *Metropolitan Life Insurance Co.,* 250 Mich 540.

In the case at bar exhibit 13 was a contract between the parties. An examination of this exhibit clearly shows that plaintiff was entitled to a refund of $611. Instead of receiving this amount plaintiff paid the sum of $8,854. A mutual mistake was made in paying and receiving this amount. No consideration was received by plaintiff in making the overpayment. Under such circumstances plaintiff is entitled to a judgment. We are in accord with the finding of the trial court in the following from the opinion of the court:

"The court finds from the facts that there was a net overpayment of $9,465, and that the overpayment was a direct outcome of a mutual mistake. Both parties had available to them the detailed price change analysis submitted by defendant pursuant

to Bulletin No 1.  The totaling of the figures therein set forth and the application of said revised figures to the original contract price would have revealed the over-all net reduction to be the amount involved in this action.  The fact that neither party arrived at an accurate price revision cannot detract from the ultimate result of overpayment due to mutual mistake.  The mutual mistake was one of an existing fact and one which was material to the entire transaction.  It went to the essence of the object in view and was not merely incidental."

The judgment is affirmed, with costs.

DETHMERS, C. J., and SMITH, EDWARDS, VOELKER, KELLY, CARR, and BLACK, JJ., concurred.