SHIELD BENEFIT ADMINISTRATORS, INC v UNIVERSITY OF MICHI-
GAN BOARD OF REGENTS

Docket No. 192416. Submitted May 7, 1997, at Grand Rapids. Decided Sep-
tember 23, 1997, at 9:00 A.M.

Shield Benefit Administrators, Inc., and Oven-Fresh Bakeries, Inc.,
brought an action in the Court of Claims against the University of
Michigan Board of Regents, seeking restitution of a payment made
to the University of Michigan Medical Center by Shield, as third-
party administrator of Oven-Fresh's health plan, for services ren-
dered to Claudette Hodge, an insured under the health plan. The
parties filed cross-motions for summary disposition on stipulated
facts indicating that the Medical Center obtained preauthorization
from Shield before each of the medical services was provided, that
the Medical Center obtained from Hodge an assignment of her ben-
efits and billed Shield directly, and that Shield paid in full even
though the payment was in excess of the plan's maximum. The
court, Michael G. Harrison, J., granted summary disposition for the
plaintiffs and denied summary disposition for the defendant, deter-
mining that the payment was made under a mistake of fact and
that, under Michigan case law, a payment under a mistake of fact
must be refunded, even if the mistake was due to a lack of investi-
gation by the payor, in the absence of detrimental reliance by the
payee on the payment. The defendant appealed.

The Court of Appeals *held*:

1. Restatement, Restitution, § 14(1)—which provides that a credi-
tor of another or one having a lien on another's property, who has
received from a third person any benefit in discharge of the debt or
lien, is under no duty to make restitution therefor as to his inter-
ests and duties, if the transferee made no misrepresentation and
did not have notice of the transferor's mistake—is adopted as law
and applies to this case.

2. The retroactive application of Restatement, Restitution, § 14(1)
to this case does not overrule established precedent and will not
affect negatively the administration of justice.

Reversed.

YOUNG, P.J., dissenting, stated that the well-settled common-law
rule that a voluntary payment made under a mistake of fact may be

recovered, even if the mistake is due to a lack of investigation, as long as the recipient has not changed position in detrimental reliance on the payment should not·be abandoned in favor of Restatement, Restitution, § 14(1) in the absence of a full assessment of the effects on commerce such a change in the common law would occasion

Payment — Mistake of Fact — Restitution.

A creditor who receives from a third person a payment in discharge of the debtor's obligation as a result of a mistake of fact by the third person is under no duty to make restitution if the creditor made no misrepresentation and did not have notice of the mistake.

*Miller, Johnson, Snell & Cummiskey, P.L.C.* (by *Stephen R. Ryan*), for the plaintiffs.

*Stein, Moran, Raimi & Goethel, P.C.* (by *Diana Raimi*), for the defendant.

Before: YOUNG, P.J., and DOCTOROFF and CAVANAGH, JJ.

DOCTOROFF, J. The parties to this case filed cross-motions for summary disposition on the basis of stipulated facts. Upon plaintiffs' motion, the trial court entered judgment for plaintiffs Shield Benefit Administrators, Inc., and Oven-Fresh Bakeries, Inc. Defendant University of Michigan Board of Regents appeals as of right. We reverse.

According to the stipulated facts, the husband of Claudette Hodge was an employee of plaintiff Oven-Fresh Bakeries, Inc., through which he and his dependents were insured under a group health plan. Plaintiff Shield Benefit Administrators, Inc., (Shield) is a third-party administrator that administers Oven-Fresh's health plan. Hodge was insured under the Oven-Fresh health plan and received treatment at the University of Michigan Medical Center. The medical care was delivered during the first five months of

1994 and cost $4,260. Before each provision of service to Hodge, the Medical Center obtained preauthorization from a Shield agent. The Medical Center obtained an assignment from Hodge and directly billed Shield for the services rendered to Hodge. Shield submitted full payment to the Medical Center for Hodge's treatments.

After making the payment to the Medical Center, Shield discovered that benefits had been paid in excess of Hodge's maximum plan benefit for the applicable period. Accordingly, in November 1994, Shield notified the Medical Center that Shield should not have paid for Hodge's services, and Shield requested that the payment be refunded. The Medical Center refused to return the $4,260 paid by Shield for the services rendered to Hodge. Shield then filed this action.

The trial court determined that Shield made payment under a mistake of fact and found that, in Michigan, payment made under a mistake of fact must be refunded, even if the mistake was due to a lack of investigation. An exception to this rule exists if repayment would be inequitable in view of the payee's detrimental reliance on the payment. The trial court found no detrimental reliance of this case and thus denied defendant's motion for summary disposition and ordered restitution of the full amount paid, plus interest and costs.

The trial court analyzed this case as a "mistake of fact" situation. It is a well-settled rule that payment made under a mistake of fact can be recovered even if the mistake could have been avoided by the payor. *Couper v Metropolitan Life Ins Co*, 250 Mich 540, 544; 230 NW 929 (1930); *Madden v Employers Ins of*

*Wausau*, 168 Mich App 33, 40; 424 NW2d 21 (1988). However, neither *Couper* nor *Madden* dealt with a third-party creditor such as the hospital in this case.[1] Thus, this Court, for the first time, is faced with the question whether a medical provider, as a third-party creditor accepting payment to discharge a debt owed by an insured patient, is required to make restitution for a mistaken payment by the insurer. It is undisputed that defendant, as the medical provider, had no notice of the mistake at the time payment was made.

On appeal, plaintiffs contend that, in a case of a third-party creditor, the rule should not change: absent detrimental reliance, payment made under a "mistake of fact" should be refunded. However, defendant urges this Court to adopt the rule expressed in Restatement, Restitution, § 14(1), which would create an exception to the general rule of a "mistake of fact" when a third-party creditor was involved. The Restatement provides:

> A creditor of another or one having a lien on another's property who has received from a third person any benefit in discharge of the debt or lien, is under no duty to make restitution therefor, although the discharge was given by mistake of the transferor as to his interests and duties, if the transferee made no misrepresentation and did not have notice of the transferor's mistake. [Restatement, Restitution, § 14(1), p 55.]

We agree with defendant and adopt the rule expressed in the Restatement.

---

[1] *Couper, supra,* involved a two-party transaction in which an overpayment was made to an insured because of a clerical error. *Madden, supra,* involved a payment to the injured party by an insurance agent under the mistaken belief that the insured was not covered by another insurer whose coverage was primary.

Unlike the cited Michigan cases involving a "mistake of fact," this case does not involve a payee who has been unjustly enriched. In this case, the defendant's hospital performed valuable services for Hodge and was reimbursed for such services by plaintiff Shield. Thus, it was Hodge, not the hospital, who unjustly benefited from plaintiff's mistake. We agree with the Nebraska Supreme Court, which stated the following in an opinion dealing with the same issue:

> The widespread use of assignments of policy benefits to hospitals by patients is well known and is recognized by the health insurance industry. To subject a hospital to possible refund liability if the insurer later discovers a mistaken overpayment, lasting until all such claims are barred by the statutes of limitation, would be to place an undue burden of contingent liability on such institutions. Hospitals would be safe only by requiring insurers to pay benefits directly to the insured patient, and then by accepting payment directly from the patient. By this ruling, we place the burden for determining the limits of policy liability squarely on the only party (as between the insurer and the assignee hospital) in a position to know the policy provisions and its liability under that contract of insurance. Someone must suffer the loss, and as between plaintiff insurer and defendant hospital, the party making the mistake should bear that loss. [*Federated Mut Ins Co v Good Samaritan Hosp*, 191 Neb 212, 215-217; 214 NW2d 493 (1974).][2]

---

[2] We further note the following cases from foreign jurisdictions that have accepted the Restatement position: *Lincoln Nat'l Life Ins Co v Brown Schools*, 757 SW2d 411, 414 (Tex App, 1988); *Nat'l Benefit Administrators v Mississippi Methodist Hosp & Rehabilitation Center*, 748 F Supp 459, 464-466 (SD Miss, 1990); *City of Hope Nat'l Medical Center v Western Life Ins Co*, 8 Cal App 4th 633, 637-638; 10 Cal Rptr 2d 465 (1992); *Time Ins Co v Fulton-DeKalb Hosp Authority*, 211 Ga App 34, 36; 438 SE2d 149 (1993); and *St Mary's Medical Center v United Farm Bureau Family Life Ins Co*, 624 NE2d 939, 946 (Ind App, 1993). See also anno: *Right of insurer under health or hospitalization policy to restitution of payments made under mistake*, 79 ALR3d 1113.

In this case, we agree with the reasoning of the Nebraska court that, as between plaintiff insurer and defendant hospital, plaintiff was in the better position to interpret the terms of its own contract, and it should bear the loss of its own mistake.

Plaintiffs contend that even if this Court adopts the third-party creditor exception of Restatement, Restitution, § 14(1), the rule cannot be applied retroactively. We disagree. Because this issue has not previously been addressed by a Michigan court in the context of a third-party creditor, it does not overrule established precedent and thus can be applied retroactively. See *Tebo v Havlik*, 418 Mich 350, 381; 343 NW2d 181 (1984) (dissenting opinion by LEVIN, J). Furthermore, retroactive application of the Restatement will not affect negatively the administration of justice. See *King v General Motors Corp*, 136 Mich App 301, 306; 356 NW2d 626 (1984). Accordingly, we hold that Restatement, Restitution, § 14(1) will be applied retroactively to the case at bar.

As noted above, it is undisputed that defendant "made no misrepresentation and did not have notice of the transferor's mistake." Restatement, Restitution, § 14(1). Accordingly, under the Restatement provision that we have today adopted, defendant, as a third-party creditor, was not required to repay the funds tendered by Shield. The decision of the trial court is reversed.

Because of our disposition of the above issue, we need not address defendant's argument that Shield did not make a true "mistake of fact."

Reversed. Defendant, being the prevailing party, may tax costs pursuant to MCR 7.219.

CAVANAGH, J., concurred.

YOUNG, P.J. *(dissenting)*. I respectfully dissent.

The parties submitted this dispute to the trial court for resolution on cross-motions for summary disposition on stipulated facts. It appears that the University of Michigan Medical Center (the hospital) provided medical services to a dependent of an employee of plaintiff Oven-Fresh Bakeries, Inc., which dependent was covered under the Oven-Fresh medical insurance plan provided or administered by plaintiff Shield Benefit Administrators, Inc. The hospital billed plaintiffs for these services. In apparent error, Shield Benefit sent payment in excess of that allowed under the terms of the insurance plan. When Shield Benefit sought reimbursement for the overpayment, the hospital declined and this litigation ensued. On the stipulated facts, the circuit court concluded that reimbursement was required in accordance with a line of Michigan cases, including *Montgomery Ward & Co v Williams*, 330 Mich 275; 47 NW2d 607 (1951).[1]

If, in our state's jurisprudence, any legal rule could be said to be "well settled," the equitable principle referenced in *Montgomery Ward* is such a rule. It has been a part of our jurisprudence since at least 1886. See *Lane v Pere Marquette Boom Co*, 62 Mich 63, 67; 28 NW 786 (1886). The rule has been stated as follows:

---

[1] *Montgomery Ward, supra*, in reliance on earlier Supreme Court precedent, held that a voluntary payment made under a mistake of fact may be recovered, even if the mistake was a product of a failure to investigate. *Id.* at 284. This rule has apparently never been rejected by the Supreme Court. The equitable foundation for the rule has been varyingly characterized as being derived from a restitution principle as well as serving the avoidance of unjust enrichment. See *Hofmann v Auto Club Ins Ass'n*, 162 Mich App 424, 429; 413 NW2d 455 (1987).

> It is well settled law that a payment, although voluntarily made, if made under a mistake of a material fact, may be recovered, even if the mistake be due to a lack of investigation. [*Couper v Metropolitan Life Ins Co*, 250 Mich 540, 544; 230 NW 929 (1930).]

An exception to this rule has also been recognized: The recipient of the mistaken payment may retain it when the recipient has changed position in detrimental reliance on the payment. *Leute v Bird*, 277 Mich 27, 31; 268 NW 799 (1936). The stipulated facts submitted in this case indicate that the hospital did not assert or rely upon the detrimental reliance exception.

It is suggested by the hospital that the line of Michigan cases including *Montgomery Ward* should be supplanted by our adoption of Restatement, Restitution, § 14(1).[2] Restatement, Restitution, § 14(1), contrary to the Michigan rule referenced in *Montgomery Ward*, allows an innocent creditor to retain a mistaken payment made by a third person that discharges the debt of another without the necessity of showing detrimental reliance. I am unconvinced that the Michigan rule is inadequate, as contended, to cover sufficiently and equitably the circumstances of this case. As a rule of equity, it seems reasonable to require the return of a mistaken payment, particularly when the payee can demonstrate no change of position or detrimental reliance as a consequence of receiving the mistaken payment. Such has been Michigan's rule for more than one hundred years, and it is well understood.

---

[2] The text of the Restatement is quoted in the majority opinion, *ante* at 470.

Moreover, I have substantial concern about the competence of this Court to make the policy choice it has today adopted. I know that we have very little basis on the record before us to assess the effect of the new rule the majority has embraced. I believe it particularly important when adopting changes in our common law that the Court fully assess the effect of that change.[3]

I am especially mindful of the fact that neither party addressed the implications of the effect on commerce that the adoption of the Restatement position would occasion. Indeed, when asked at oral argument what these effects might be, counsel for the hospital indicated that she had not considered the issue. The majority, for its part, has not bothered to consider or discuss the potential effect of its decision.

While the Restatement position may be an entirely salutary rule, I cannot help but think that this change in our common law (particularly in the insurer/healthcare provider world that is involved in

---

[3] By way of example, I note the case of *Toussaint v Blue Cross & Blue Shield of Michigan*, 408 Mich 579; 292 NW2d 880 (1980). Although motivated by honorable intentions, our Supreme Court launched almost two decades of litigation and tremendous tumult in the fabric of Michigan's contract law when it announced its decision in *Toussaint*. After more than seventeen years, we are still trying to define the contours of the "*Toussaint* doctrine." See, e.g., *Lytle v Malady*, 456 Mich 1; 566 NW2d 582 (1997). The significant point to be made is that it is hard to identify the legal principle that *Toussaint* was intended to vindicate that centuries old quasi-contract doctrines (such as detrimental reliance) could not have adequately addressed. Given that our decision making in the common-law area can have profound, expensive, and dislocating effect as the *Toussaint* example illustrates, I believe that the judiciary is obligated to perform exacting cost-benefit analyses of new common-law rules it adopts to ensure that the new rule truly provides more "cure" than that afforded by the existing rules. I do not believe that the record in this case provides a basis for such an analysis.

this case)[4] will result in a substantially diminished interest on the part of insurers to make any payments before the entirety of an insured's medical bills have been audited. Otherwise, under the rule adopted today by the majority, a mistaken payment will be retained. Assessing the merits of the tradeoff between the policy choices involved (by way of example only, promoting early, but perhaps some mistaken, payments to providers versus encouraging completely accurate payments to providers) is precisely the kind of task that the Legislature, with input from the public, is most competent to undertake. The reluctance of this Court to modify the common law should be especially strong when a rule of long standing is involved and the consequences of changing that rule are unclear.

Consequently, while I concede that it is within the power of this Court to add to the common law as the majority has done, for prudential reasons I would decline the hospital's invitation, leave our current common-law remedy in place, and recommend that defendant seek a legislative change in our laws.

---

[4] The new common-law position the majority adopts today is not limited to the health insurance reimbursement field. Given that little thought has been given to the effect of the majority's new rule in that field, absolutely no consideration of its effect in other fields has been contemplated.