WILSON v NEWMAN

Docket No. 115288. Decided October 10, 2000. On application by the garnishee defendant for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the decisions of the circuit court that precluded recovery of the mistaken payment on the basis of § 14 of the Restatement of Restitution, and remanded the case for further proceedings.

Glenn B. and Judy G. Wilson obtained a money judgment against Robert L. Newman, which they sought to enforce through a writ of garnishment directed to garnishee First Allmerica Financial Life Insurance Company. The garnishee paid the judgment in the mistaken belief that it was indebted to the defendant. The Oakland Circuit Court, Denise Langford-Morris, J., denied First Allmerica's request for relief from the garnishment order. The Court of Appeals, ZAHRA, P.J., and TALBOT and WILDER, JJ., denied leave to appeal in an unpublished order, citing *Shield Benefit Administrators, Inc v Univ of Michigan Bd of Regents*, 225 Mich App 467 (1997), which adopted Restatement Restitution, § 14 to preclude recovery (Docket No. 218654). First Allmerica seeks leave to appeal.

In an opinion per curiam, signed by Chief Justice WEAVER, and Justices TAYLOR, CORRIGAN, YOUNG, and MARKMAN, the Supreme Court *held*:

*Shield Benefit Administrators*, in adopting Restatement Restitution, § 14, improperly rejected prior Michigan precedent that permits recovery of mistaken payments absent detrimental reliance by the payee.

As a general rule, a payment made under a mistake of fact that induces the belief that the other party is entitled to receive the payment when, in fact, the sum is neither legally nor morally due, may be recovered, provided the payment has not caused such a change in the position of the payee that it would be unjust to require the refund.

Reversed and remanded.

Justice KELLY, dissenting, stated that the Court of Appeals did not reject existing Michigan precedent when it decided *Shield Benefit Administrators*. Rather, it followed *Walker v Conant*, 69 Mich 321 (1888), which enunciated principles consistent with Restatement

Restitution, § 14, and bound the Court in *Shield Benefit*. The precedent referred to by the majority, *Couper v Metropolitan Life Ins Co*, 250 Mich 40 (1930), and *Madden v Employers Ins of Wausau*, 168 Mich App 33 (1988), involved different circumstances than existed in *Shield Benefit* or in this case, i.e., a mistaken payment in a two-party situation. *Shield Benefit*, like this case, however, concerns a mistaken payment to a third-party creditor. Because the factual settings in *Couper* and *Madden* are markedly different from those in *Shield Benefit* and the instant case, the holdings of the former do not bind the latter. The majority should have addressed *Walker*, and if appropriate, attempted to distinguish it. In any event, it should have provided a stare decisis analysis justifying its departure from *Walker*.

Justice CAVANAGH, dissenting, stated that the issue presented is significant enough to the state's jurisprudence that it should be resolved by grant rather than by an opinion per curiam.

*Dickinson, Wright, P.L.L.C.* (by *Francis R. Ortiz* and *Scott A. MacGriff*), for the garnishee defendant-appellant.

PER CURIAM. This appeal arises out of a postjudgment garnishment proceeding. The plaintiffs obtained a judgment against defendant Newman, which they sought to enforce through a writ of garnishment directed to garnishee First Allmerica Financial Life Insurance Company. The garnishee paid the judgment in the mistaken belief that it was indebted to the defendant. The circuit court denied its request for relief from the garnishment order, and the Court of Appeals denied leave to appeal.

We conclude that the case on which the lower courts relied, *Shield Benefit Administrators, Inc v Univ of Michigan Bd of Regents*, 225 Mich App 467; 571 NW2d 556 (1997), improperly rejected prior Michigan precedent in adopting Restatement Restitution, § 14. We adhere to prior Michigan law, which permits recovery of mistaken payments absent detrimental reliance by the payee. We therefore reverse the judg-

ments of the Court of Appeals and the circuit court and remand the case to the circuit court for further proceedings.

I

Defendant Newman borrowed money from the plaintiffs. When he failed to repay the debt, plaintiffs brought this action to recover the remaining loan balance, together with interest and attorney fees. Ultimately, Newman agreed that he owed the debt, and a consent judgment was entered in plaintiffs' favor.

The plaintiffs obtained issuance of a writ of garnishment directed to garnishee First Allmerica Financial Life Insurance Company, seeking any funds owed by First Allmerica to Newman.

In preparing the response to the writ of garnishment, First Allmerica's staff discovered several insurance policies owned by a Robert L. Newman and disclosed indebtedness to defendant Newman as a result. When no objections to the disclosure were received, it sent a check to the plaintiffs in care of their attorney dated September 1, 1998, in the amount of $43,021.58. The funds were withdrawn from two life insurance policies owned by its insurer. Shortly thereafter, the garnishee discovered that the policies were not those of defendant Newman, but rather of a Colorado resident with a different social security number.[1] First Allmerica contacted plaintiffs' counsel on September 18 to advise of the error and requested return of the funds in a letter dated September 23, 1998. Plaintiffs refused to return the

---

[1] Defendant Newman's social security number was correctly stated in the writ of garnishment.

funds, and on November 3, 1998, the garnishee filed a motion for relief from the garnishment order.

The circuit court denied relief, relying on *Shield Benefit, supra.* It opined that the garnishee, the party making the mistake, should bear the loss. The court noted that there was no claim that the plaintiffs made any misrepresentations or knew of the mistake.

The garnishee filed a delayed application for leave to appeal with the Court of Appeals.[2] The application was denied with an order citing *Shield Benefit*:

> The Court orders that the delayed application for leave to appeal is denied for lack of merit in the ground presented. Pursuant to MCR 7.215(H), we are bound to follow *Shield Benefit Administrators*, [*supra*]. MCR 7.215(H)(2) does not provide this panel authority to declare a conflict with *Shield Benefit Administrators, Inc, supra,* because orders of this Court are not published. Appellants' relief, if any, rests exclusively in the Supreme Court.[3]

Garnishee First Allmerica has filed an application for leave to appeal to this Court.

II

*Shield Benefit, supra,* involved a claim that health insurance benefits were mistakenly paid. The case was submitted on stipulated facts, which the Court of Appeals summarized as follows:

---

[2] It originally attempted to file a claim of appeal, which the Court of Appeals dismissed for lack of jurisdiction because the order denying relief from garnishment was a postjudgment order that is not appealable of right. MCR 7.202(7)(a)(i).  Unpublished order, entered March 11, 1999 (Docket No. 216293).

[3] Unpublished order, entered July 26, 1999 (Docket No. 218654).

According to the stipulated facts, the husband of Claudette Hodge was an employee of plaintiff Oven-Fresh Bakeries, Inc., through which he and his dependents were insured under a group health plan. Plaintiff Shield Benefit Administrators, Inc., (Shield) is a third-party administrator that administers Oven-Fresh's health plan. Hodge was insured under the Oven-Fresh health plan and received treatment at the University of Michigan Medical Center. The medical care was delivered during the first five months of 1994 and cost $4,260. Before each provision of service to Hodge, the Medical Center obtained preauthorization from a Shield agent. The Medical Center obtained an assignment from Hodge and directly billed Shield for the services rendered to Hodge. Shield submitted full payment to the Medical Center for Hodge's treatments.

After making the payment to the Medical Center, Shield discovered that benefits had been paid in excess of Hodge's maximum plan benefit for the applicable period. Accordingly, in November 1994, Shield notified the Medical Center that Shield should not have paid for Hodge's services, and Shield requested that the payment be refunded. The Medical Center refused to return the $4,260 paid by Shield for the services rendered to Hodge. Shield then filed this action. [225 Mich App 468-469.]

The *Shield Benefit* majority recognized that there was a well-settled rule that payment made under a mistake of fact can be recovered even if the mistake could have been avoided by the payor. *Couper v Metropolitan Life Ins Co*, 250 Mich 540, 544; 230 NW 929 (1930); *Madden v Employers Ins of Wausau*, 168 Mich App 33, 40; 424 NW2d 21 (1988). The Court noted, however, that neither case involved a third-party creditor, such as the hospital in that case. The Court was thus faced with the question whether to apply the traditional rule in the third-party case or whether to adopt the position expressed in Restatement Restitution, § 14(1), p 55, which creates an

exception to the general mistake of fact rule when a third-party creditor is involved:

> A creditor of another or one having a lien on another's property who has received from a third person any benefit in discharge of the debt or lien, is under no duty to make restitution therefor, although the discharge was given by mistake of the transferor as to his interests or duties, if the transferee made no misrepresentation and did not have notice of the transferor's mistake.

Relying on a number of cases that have adopted the Restatement principle in the context of payments by insurers to medical care providers, particularly *Federated Mut Ins Co v Good Samaritan Hosp*, 191 Neb 212; 214 NW2d 493 (1974), the *Shield Benefit* Court adopted the Restatement position and held that the insurer could not recover the erroneous payments.

Judge YOUNG, dissenting in *Shield Benefit*, saw no reason to abandon the well-settled rule that a voluntary payment made under a mistake of material fact may be recovered. *Montgomery Ward & Co v Williams*, 330 Mich 275; 47 NW2d 607 (1951). He noted also the recognition of an exception—the recipient may retain the mistaken payment when the recipient has changed position in detrimental reliance on it. *Leute v Bird*, 277 Mich 27, 31; 268 NW 799 (1936).

Noting the hospital's request to adopt § 14(1) of the Restatement, Judge YOUNG said:

> I am unconvinced that the Michigan rule is inadequate, as contended, to cover sufficiently and equitably the circumstances of this case. As a rule of equity, it seems reasonable to require the return of a mistaken payment, particularly when the payee can demonstrate no change of position or detrimental reliance as a consequence of receiving the mistaken payment. Such has been Michigan's rule for more

than one hundred years, and it is well understood. [225 Mich App 474.]

Judge YOUNG went on to question the appropriateness of changing the longstanding rule regarding restitution of payments made by mistake, noting the lack of information about the effect of such a policy change.

III

We agree with the dissent in *Shield Benefit* that it was inappropriate for the Court of Appeals to have adopted the principle of § 14 of the Restatement of Restitution in that case. The longstanding Michigan authority on the subject is sound, and provides all the necessary exceptions to protect payees where it is appropriate to do so. We summarized those principles in *General Motors Corp v Enterprise Heat & Power Co*, 350 Mich 176; 86 NW2d 257 (1957):

> The general rule relative to the right to recover money paid through a mistake of fact is well stated in *Smith v Rubel*, 140 Or 422, 426, 427 (13 P2d 1078, 87 ALR 644) [(1932)], where it was said:
>
> "As a general rule, a payment made under a mistake of fact which induces the belief that the other party is entitled to receive the payment when, in fact, the sum is neither legally nor morally due to him, may be recovered, provided the payment has not caused such a change in the position of the payee that it would be unjust to require the refund. . . ."
>
> Michigan has generally followed this rule. In *Walker v Conant*, 65 Mich 194, 197, 198 [31 NW 786 (1887)], we said:
>
> "The rule is general that money paid under a mistake of material facts may be recovered back, although there was negligence on the part of the person making the payment; but this rule is subject to the qualification that the payment

cannot be recalled when the situation of the party receiving the money has been changed in consequence of the payment, and it would be inequitable to allow a recovery."

In *Pingree v Mutual Gas Co*, 107 Mich 156, 159, 160 [65 NW 6 (1895)], we said:

"Payments made by reason of a mistake or ignorance of a material fact are regarded as involuntarily made. Ignorance of a fact may be equivalent to a mistake of fact."

In *State Savings Bank of Ann Arbor v Buhl*, 129 Mich 193, 197 [88 NW 471 (1901)] (56 LRA 944), we said:

"While it may be difficult to find a case on all fours with this, it may be said the courts almost unanimously now hold that, although the mistake of facts is caused by the negligence of one party, that party is not precluded thereby from availing himself of the mistake if the other party can be relieved of any prejudice caused thereby."

See, also, *Couper v Metropolitan Life Insurance Co*, 250 Mich 540. [350 Mich 181-182.][4]

---

[4] Indeed, even under the established Michigan law, denial of reimbursement in *Shield Benefit* may well have been appropriate. In that case, before providing service to the patient, the defendant medical center obtained preauthorization from a Shield Benefit agent. Thus, the medical center was arguably relying on the expected payments from Shield Benefit in rendering services to the insured.

Similarly, we think the traditional Michigan rule permitting restitution of mistaken payments, with appropriate exceptions, produces a just result in the instant case. It is undisputed that the property held by garnishee Allmerica Financial was not that of defendant Newman, but rather of another person with the same name, making this a case of payment by mistake within the general rule. As many Michigan cases have said, the fact that the mistake is the result of negligence by the payor is not dispositive. E.g., *General Motors Corp v Enterprise Heat & Power Co, supra; Couper v Metropolitan Life Ins Co, supra; Pingree v Mut Gas Co, supra.*

Courts often say that when one of two innocent parties must suffer a loss, it should be borne by the one whose conduct made the loss possible. E.g., *Langschwager v Pinney*, 351 Mich 473; 88 NW2d 276 (1958). However, such analysis does not apply in this case. Under the result reached by the lower courts, Allmerica Financial will unquestionably suffer a loss. It will have paid more than $43,000 to the plaintiffs, and will also continue to owe that amount to its Colorado policyholder, whom it mistakenly believed to be defendant Newman. By contrast, absent some showing of specific prejudice, as discussed further below, the plaintiffs will not suffer loss as a result of restitution. The plaintiffs had a judgment against defen-

The plaintiffs have contended that they in fact were prejudiced by the defendant's mistaken payment, for example, forgoing other collection efforts that may not now be available. Such claims are available under the Michigan cases cited earlier. If the plaintiffs can demonstrate a change of position or detrimental reliance as a consequence of having received the mistaken payment, they may be entitled to retain all or part of the funds mistakenly paid by Allmerica. However, given the disposition of the case by the lower courts, the record has not been developed on this issue and cannot be decided by this Court.

Accordingly, we reverse the decision of the lower court that precluded recovery of the mistaken payment on the basis of § 14 of the Restatement of Restitution. We remand the case to the Oakland Circuit Court for further proceedings to determine whether, on the facts of this case, restitution of the mistaken payment is appropriate.

WEAVER, C.J., and TAYLOR, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred.

KELLY, J. I dissent. Today, the majority holds that the Court of Appeals improperly rejected existing Michigan precedent when it wrote *Shield Benefit Administrators, Inc v Univ of Michigan Bd of Regents*.[1] *Shield Benefit* adopted the Restatement on Restitution, § 14(1),[2] *ante* at 436-437. The "precedent"

---

dant Newman, which they were entitled to collect by whatever means the law permits. After restitution of the mistaken payment by Allmerica, they would be left in exactly the same position, possessed of the same judgment, which they may proceed to attempt to collect.

[1] 225 Mich App 467; 571 NW2d 556 (1997).

[2] Restatement Restitution, § 14(1), p 55, provides:

referred to by the majority is *Couper v Metropolitan Life Ins Co*[3] and *Madden v Employers Ins of Wausau.*[4]

However, these cases involved a different circumstance than exists either in *Shield Benefit* or in the case before us on appeal. Specifically, *Couper* and *Madden* involved a mistaken payment in a two-party situation. One party mistakenly paid money to the other. *Shield Benefit*, like this case, concerns a mistaken payment to a third-party creditor. One party mistakenly paid the creditor of another party. Because the factual settings in *Couper* and *Madden* are markedly different from those in *Shield Benefit* and the instant case, the holdings of the former do not bind the latter.

The majority rejects the principles embodied in Restatement, § 14. In so doing, it ignores this Court's holding in *Walker v Conant.*[5] Although *Walker* is a very old case, its holding, which enunciates principles consistent with Restatement, § 14, remained good law until today. It bound the Court in *Shield Benefit.* Thus, contrary to the majority's assertion, the decision in *Shield Benefit* did follow prior Michigan precedent when it adopted the Restatement on Restitution, § 14.

---

A creditor of another or one having a lien on another's property who has received from a third person any benefit in discharge of the debt or lien, is under no duty to make restitution therefor, although the discharge was given by mistake of the transferor as to his interests or duties, if the transferee made no misrepresentation and did not have notice of the transferor's mistake.

[3] 250 Mich 540, 544; 230 NW 929 (1930).

[4] 168 Mich App 33, 40; 424 NW2d 21 (1988).

[5] 69 Mich 321; 37 NW 292 (1888).

The majority should have addressed *Walker*. If appropriate, it should have attempted to distinguish it. In any event, it should have provided a stare decisis analysis justifying this Court's departure from it.

Because the rejection of precedent involves a jurisprudentially significant matter, the Court should have granted leave here.

CAVANAGH, J. (*dissenting*). The rationale of the per curiam is unacceptable, and I think that the issue presented is significant enough to the state's jurisprudence that the question should be resolved by grant rather than by per curiam. Perhaps argument and briefing would lead me to the conclusion that the Restatement is inconsistent with existing Michigan law, but at this point, I see only a number of cases that can be distinguished. The question is not well settled, and should not be resolved so summarily. I, therefore, prefer that this Court grant leave.