*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

OLIVER RAVENELL,

      Plaintiff,

and

NGM INSURANCE COMPANY,

      Plaintiff-Appellee,

v

AUTO CLUB INSURANCE ASSOCIATION,

      Defendant-Appellant.

UNPUBLISHED
October 15, 2020

No. 348436
Wayne Circuit Court
LC Nos. 17-009231-NF;
16-006161-NF

Before: SWARTZLE, P.J., and JANSEN and BORRELLO, JJ.

PER CURIAM.

Plaintiff NGM Insurance Company seeks reimbursement from defendant, Auto Club Insurance Association (ACIA), for PIP benefits that NGM paid to and on behalf of plaintiff Oliver Ravenell. Because this Court is bound to follow *Amerisure Cos v State Farm Mut Auto Ins Co*, 222 Mich App 97; 564 NW2d 65 (1997), and *Titan Ins Co v North Pointe Ins Co*, 270 Mich App 339; 715 NW2d 324 (2006), we conclude that NGM is not entitled to the reimbursement it seeks, and the trial court erred as a matter of law in granting NGM that relief. We therefore vacate the trial court's denial of summary disposition in favor of ACIA, both of the trial court's orders granting summary disposition in favor of NGM, and the trial court's entry of a monetary judgment in favor of NGM. We remand this matter to the trial court for entry of summary disposition in favor of ACIA under MCR 2.116(I)(2).

## I. BACKGROUND

On November 6, 2014, Oliver Ravenell was struck by a car being driven by Thaddeus Stec. Ravenell filed a claim for personal-injury-protection (PIP) benefits with NGM, which was the commercial-automobile insurer of three vehicles listed on a policy issued by NGM to Omega

Appraisals, LLC, a company for which Ravenell's wife was the resident agent. Ravenell also filed a bodily-injury claim for threshold damages with ACIA, Stec's auto-insurance carrier.

NGM paid in excess of $331,000 in PIP benefits to and on behalf of Ravenell. Eventually, however, NGM took the position that Ravenell was not covered by the policy that it issued to Omega because neither Ravenell nor his wife were listed in the policy as named insureds. NGM further took the position that ACIA, as Stec's insurer, was responsible for paying PIP benefits to Ravenell. NGM filed this lawsuit against ACIA, seeking reimbursement of the PIP benefits that it paid to Ravenell. NGM styled its complaint as one for "reimbursement, indemnification, and declaratory relief." The complaint contained two counts. NGM labeled the first count as "Defendant, ACIA, is the Sole Insurer in the Orders of Priority," and labeled the second count as unjust enrichment. NGM alleged that ACIA was required to pay Ravenell's PIP benefits because it was the only auto insurer in the orders of priority, and that ACIA "owes NGM in excess of $331,000.00."

Ravenell then filed a lawsuit against ACIA for PIP benefits, and the two lawsuits were consolidated in the trial court. After discovery, NGM filed a motion under MCR 2.116(C)(10), seeking partial summary disposition regarding liability. In that motion, NGM argued that it was never liable to pay PIP benefits to Ravenell under the no-fault act, and that ACIA was the only auto-insurer that was liable to pay those PIP benefits. Therefore, NGM asked the trial court to find that ACIA was "the insurer highest in the orders of priority to pay no-fault benefits" to Ravenell.

ACIA responded by arguing that NGM was not entitled to partial summary disposition and that the trial court should instead grant summary disposition in its favor under MCR 2.116(I)(2). ACIA first argued that NGM's claim was barred by the one-year statute of limitations set forth in MCL 500.3145(1) because NGM did not file suit within one year after the accident, and did not provide ACIA notice within that first year. In addition, ACIA argued that NGM's action was "an attempted subrogation claim, by which NGM purports to stand in the shoes of Ravenell [and] seek benefits" from ACIA. Furthermore, ACIA argued that NGM's subrogation claim failed because it had no contractual or statutory obligation to pay PIP benefits to Ravenell, and it therefore paid those benefits as a "mere volunteer." In support of this argument, ACIA relied on *Amerisure*, 222 Mich App at 102-103; and *Titan*, 270 Mich App at 343-344.

Although NGM did not mention its unjust-enrichment claim in its motion for partial summary disposition, ACIA addressed the claim briefly in a footnote in its brief opposing that motion. Citing *Bellevue Ventures, Inc v Morang-Kelly Inv, Inc*, 302 Mich App 59, 64; 836 NW2d 898 (2013), ACIA argued that, to be viable, an unjust-enrichment claim requires that the defendant received a benefit from the plaintiff. ACIA argued that only Ravenell received something from NGM,[1] but that ACIA did not. ACIA argued that it could not retain something that it never received, and that NGM's unjust-enrichment claim therefore failed as a matter of law.

---

[1] NGM's attorney stated on the record at the motion hearing that NGM had "no intention of pursuing Mr. Ravenell for anything."

At the hearing on NGM's motion for partial summary disposition, the trial court ruled that ACIA was first in line of priority under MCL 500.3115 and that it received proper notice within one year of the accident. The trial court did not address ACIA's arguments regarding subrogation, and did not address NGM's unjust-enrichment claim. The trial court granted NGM's motion for partial summary disposition and denied ACIA's request for summary disposition under MCR 2.116(I)(2). NGM subsequently moved for summary disposition under MCR 2.116(C)(10), regarding the amount of damages, and the trial court granted that motion. The trial court subsequently entered a judgment against ACIA in the amount of $182,112.64.

This appeal followed.

## II. ANALYSIS

On appeal, ACIA argues that the trial court erroneously granted NGM partial summary disposition and erroneously denied its request for summary disposition under MCR 2.116(I)(2). ACIA's principal argument is that whenever a no-fault-insurance carrier pays PIP benefits to a person injured in an auto accident and then seeks to be reimbursed for such payments from another insurer believed to be of higher priority, the action is necessarily one of equitable subrogation. ACIA further argues that NGM cannot prevail on an equitable-subrogation claim because it paid PIP benefits to Ravenell as a mere "volunteer" and that it has no right of subrogation to recover the benefits it mistakenly paid. ACIA relies on *Titan*, 270 Mich App at 343-344; *Amerisure*, 222 Mich App at 102-103; and *Michigan Mut Ins Co v Home Mut Ins Co*, 108 Mich App 274, 277-279; 310 NW2d 362 (1981). In contrast, NGM relies on *Madden v Employers Ins of Wausau*, 168 Mich App 33; 424 NW2d 21 (1988), to argue that payments of PIP benefits made by mistake may always be recovered.

This Court reviews de novo a trial court's grant or denial of a motion for summary disposition. *Titan*, 270 Mich App at 342. Whether NGM was entitled to recover against ACIA under a theory of equitable subrogation also raises an issue of law that we review de novo. *Hartford Accident & Indemnity Co v Used Car Factory, Inc*, 461 Mich 210, 215 n 5; 600 NW2d 630 (1999).

## A. THE NATURE OF NGM'S CLAIM

On appeal, the parties argue that *Madden* and *Amerisure* established contradictory rules of law, and they disagree regarding which precedent this Court should follow. We note that this Court is not constrained to follow *Madden* because it was decided before November 1, 1990. See MCR 7.215(J)(1).[2] We also note that *Amerisure* considered the analysis in *Madden* and rejected it, and that *Titan* reaffirmed and followed *Amerisure*'s analysis. Because *Amerisure* and *Titan* were issued after November 1, 1990, and are published opinions of this Court, we are required to follow those authorities. MCR 7.215(J)(1); MCR 7.215(C)(2).

---

[2] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority." *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

In *Madden*, a passenger suffered injuries as a result of a one-vehicle accident. *Madden*, 168 Mich App at 35. The passenger filed an application for PIP benefits with the driver's auto insurer. On that application, he indicated that he did not own a vehicle and that there were no family members residing in his household who owned a vehicle. *Id*. The passenger also signed an affidavit stating that he had no other auto insurance available to him. As a result, the driver's auto insurer paid more than $18,000 in PIP benefits to the passenger. *Id*. Eventually, a dispute arose over certain claimed benefits, and the passenger sued the driver's auto insurer for PIP benefits. *Id*. at 35-36. During discovery in the lawsuit, the passenger revealed that he had been living with his brother on the date of the accident, and that the brother owned a vehicle that was insured. *Id*. at 36. The driver's auto insurer added the newly discovered insurer to the lawsuit as a third-party defendant, seeking reimbursement of the PIP benefits that it had paid to the passenger. *Id*. On cross-motions for summary disposition, the trial court held that the one-year statute of limitations set forth in MCL 500.3145(1) barred recovery against the newly discovered insurer for the PIP benefits already paid. *Id*. at 36-37.

On appeal, this Court considered whether the one-year statute of limitations properly applied "when an insurer is suing another insurer on the basis that it paid benefits by mistake for which the defendant insurer was liable." *Id*. at 37. This Court considered several prior appellate decisions touching on the issue, including *Home Ins Co v Rosquin*, 90 Mich App 682; 282 NW2d 446 (1979); *Keller v Losinski*, 92 Mich App 468; 285 NW2d 334 (1979); *Federal Kemper Ins Co v Western Ins Cos*, 97 Mich App 204; 293 NW2d 765 (1980); and *Michigan Mutual*, 108 Mich App 274. Ultimately, the *Madden* Court rejected the majority holdings of those prior decisions and adopted the analysis set forth by the dissenting judge in *Keller*. *Madden*, 168 Mich App at 40.

The *Madden* panel concluded that the action between insurers was an action "for recoupment of money paid by mistake," not an action to recover PIP benefits. The *Madden* panel reasoned that the action should be characterized as neither subrogation nor "as indemnity as used in tort law," because "payments of money, although voluntarily made, if made under a mistake of material fact, may be recovered, even if the mistake is due to a lack of investigation." *Id*. at 40, citing *Montgomery Ward & Co v Williams*, 330 Mich 275; 47 NW2d 607 (1951). In addition, the *Madden* Court held that the "recovery of money paid by mistake is a common law cause of action that was not abrogated by the no-fault act." *Id*., citing *Adams v Auto Club Ins Ass'n*, 154 Mich App 186, 195; 397 NW2d 262 (1986). The *Madden* panel indicated that it based its decision on equitable considerations:

> Equity dictates this result. The purpose of the no-fault statute is to establish a scheme whereby a person injured in a motor vehicle accident would promptly receive payments of his claim for economic losses from an insurer who received compensation, in the form of premiums, to assume the risk of having to pay the claim. Madden received payment to his satisfaction. The purpose of the no-fault statute will be fulfilled when an adjudication has been made that the insurance company that received the premiums in return for accepting the risks pays those benefits according to the priorities set forth in MCL 500.3114(1) and MCL 500.3114(4). [*Id*. at 41.]

Therefore, the *Madden* Court concluded that the action between insurers was not an action to recover PIP benefits, and the one-year statute of limitations set forth in MCL 500.3145(1) was

inapplicable. *Id*. at 40. Instead, this Court concluded that the general six-year limitation period set forth in MCL 600.5813 applied. *Id*. at 40-41. Accordingly, this Court reversed the trial court's decision applying the one-year statute of limitations. *Id*. at 41.

Nine years after the decision in *Madden*, this Court considered a similar fact pattern in *Amerisure*. In that case, Leroy Rister suffered personal injuries while descending from a semi-trailer tractor, and he applied to Amerisure for PIP benefits, under a no-fault policy that Amerisure issued to Trucking Services, Inc. *Amerisure*, 222 Mich App at 98-99. Amerisure paid over $97,000 in PIP benefits to Rister because it was under the belief that Rister was an employee of Trucking Services, and was unaware that Rister had his own personal policy of auto insurance issued by State Farm. *Id*. at 98-99. Eventually, Amerisure discovered that Rister was not an employee of Trucking Services, but was rather an independent contractor. Amerisure filed a lawsuit against State Farm, seeking to recover the amount of PIP benefits that it paid Rister, arguing that those amounts should have been paid by State Farm as the priority insurer. *Id*. at 99.

Amerisure and State Farm filed cross motions for summary disposition, and State Farm argued that Amerisure's claim was barred by the one-year statute of limitations set forth in MCL 500.3145(1). The trial court agreed with State Farm that the action was one for subrogation and was barred under Section 3145(1), while rejecting Amerisure's argument "that the action was one for reimbursement of money paid by mistake to which the general six-year period of limitation embodied in MCL 600.5813 would apply." *Id*. at 99-100.

Similarly to how the *Madden* panel characterized the issue before the Court, the *Amerisure* panel stated that "[t]he issue presented is whether the one-year period of limitation in § 3145 applies where an insurer is suing another insurer on the basis that it paid benefits by mistake for which the defendant insurer was liable." *Id*. at 100. The *Amerisure* Court noted that *Madden* was not binding precedent because it was published before November 1, 1990. *Id*. at 102 n 2. Furthermore, the Amerisure Court found "the *Michigan Mutual* line of cases to be better-reasoned" and therefore chose to follow it. *Id*. at 103. As the Court explained:

> we hold that the one-year period of limitation of § 3145 of the no-fault act governs actions between no-fault insurers for recovery of monies mistakenly paid by the secondary insurer. Such actions are ones of subrogation, and, as such, plaintiff acquired no greater rights than [the injured person] had against defendant. [*Id*. at 103.]

Subsequently, in *Titan*, this Court also discussed an insurer's claim against another insurer based on its mistaken payment of benefits for which the defendant insurer was liable. *Titan*, 270 Mich App at 341, 346-347. In that case, as here, the plaintiff relied on this Court's holding in *Madden* to support its claim. *Id*. at 346-347. The *Titan* Court noted that *Madden* was not binding because it was issued before November 1, 1990. *Id*. In addition, the *Titan* Court stated that

> the reasoning in *Madden* was rejected by *Amerisure Cos*, which instead adopted the reasoning of the decision in *Michigan Mutual Ins Co* and held that 'actions between no-fault insurers for recovery of monies mistakenly paid by the secondary insurer' were claims of subrogation and subject to the limitations period in MCL 500.3145(1). [*Id*. at 347, quoting *Amerisure*, 222 Mich App at 102-103.]

-5-

Furthermore, the *Titan* Court recognized that the holdings in *Amerisure* and *Michigan Mutual* had been called into question by *Devillers v Auto Club Ins Assoc*, 473 Mich 562; 702 NW2d 539 (2005), but only "to the extent that they recognized the applicability of judicial tolling, [and] their conclusions on the issue of subrogation claims remain valid and correct." *Titan*, 270 Mich App at 347 n 1. Accordingly, this Court's opinions in both *Amerisure* and *Titan* rejected the reasoning of *Madden*, and both require a conclusion that where an insurer is suing another insurer based on its mistaken payment of benefits for which the defendant insurer was liable, such action is one of subrogation, and the plaintiff insurer acquired no greater rights than the injured person had against the defendant insurer. See *Amerisure*, 222 Mich App at 103; *Titan*, 270 Mich App at 347. As a matter of law, NGM's action against ACIA is one of subrogation.

NGM argues, however, that *Amerisure* considered only the applicability of the one-year limitations period, and is therefore inapplicable to the question before this Court. NGM's argument is unpersuasive. We note that both *Madden* and *Amerisure* considered the identical question.[3] NGM's argument provides no reason to depart from the holdings of *Amerisure* and *Titan* to follow the rule set forth in *Madden*.

NGM further argues that *Amerisure* did not abolish recovery of money paid under a mistake of fact, because the Michigan Supreme Court recognized the continued validity of that doctrine in *Wilson v Newman*, 463 Mich 435; 617 NW2d 318 (2000). In that case, the Michigan Supreme Court noted "that there was a well-settled rule that payment made under a mistake of fact can be recovered even if the mistake could have been avoided by the payor." *Id.* at 439. The Court further expressed that "[t]he longstanding Michigan authority on the subject is sound, and provides all the necessary exceptions to protect payees where it is appropriate to do so." *Id.* at 441. We agree that neither *Amerisure* nor *Titan* abolished the common-law tort of recovery of money paid under a mistake of fact. Nonetheless, *Wilson* did not address whether an auto insurer's action sounds in subrogation when it is suing another insurer based on its mistaken payment of benefits for which the defendant insurer was liable. That question was addressed squarely in *Amerisure* and *Titan*, and we are bound by those decisions.

## B. "MERE VOLUNTEER"

Given our conclusion that plaintiff's action here is one of subrogation, we must next consider whether plaintiff can prevail on such a cause of action. ACIA argues that NGM cannot prevail on a subrogation claim because it was a "mere volunteer."

---

[3] The *Madden* panel stated, "The issue in the present case is whether the above statute of limitations [§ 3145] applies when an insurer is suing another insurer on the basis that it paid benefits by mistake for which the defendant insurer was liable." *Madden*, 168 Mich App at 37. Meanwhile, the *Amerisure* panel stated, "The issue presented is whether the one-year period of limitation in § 3145 applies where an insurer is suing another insurer on the basis that it paid benefits by mistake for which the defendant insurer was liable." *Amerisure*, 222 Mich App at 100. The two cases addressed the same question.

This Court has explained that equitable subrogation is a legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other. It is well-established the subrogee acquires no greater rights than those possessed by the subrogor, and that the subrogee may not be a "mere volunteer."

When an insurance provider pays expenses on behalf of its insured, it is not doing so as a volunteer. The nature of the claim asserted by the subrogee is determined by the nature of the claim that the subrogor would have had. [*Auto-Owners Ins Co v Amoco Production Co*, 468 Mich 53, 59; 658 NW2d 460 (2003) (cleaned up).]

If NGM had paid PIP benefits to one of its insureds, it would not be considered a "volunteer." NGM takes the position, however, that it never insured Ravenell. Accepting NGM's position that it had no contractual or statutory obligation to pay PIP benefits to Ravenell, we conclude that NGM was a "mere volunteer" that cannot prevail on an equitable-subrogation claim.

The heart of a claim of equitable subrogation "rests upon the equitable principle that one who, in order to protect a security held by him, is compelled to pay a debt for which another is primarily liable, is entitled to be substituted in the place of and to be vested with the rights of the person to whom such payment is made, without agreement to that effect." In other words, equitable subrogation is available only to those who are compelled to pay a debt, not to mere volunteers. "To avoid being a volunteer, a subrogee must be acting to fulfill a legal or equitable duty." Accordingly, an insurer who pays expenses on behalf of its insured is not a mere volunteer. "The rationale is that an insurance company that pays a claim that another insurer may be liable for is protecting its own interests and not acting as a volunteer." [*Esurance Prop & Cas Ins Co v Michigan Assigned Claims Facility*, ___ Mich App ___ , ___; ___ NW2d ___ (2019) (slip op at 5-6) (cleaned up).]

Because NGM takes the position that Ravenell was not a named insured under the commercial-automobile-insurance policy that it issued to Omega Appraisals, and that it did not owe Ravenell PIP benefits, NGM's equitable-subrogation claim necessarily fails. "Without a policy, plaintiff would have paid benefits not to its insured, but to an individual with whom it had no relationship. Without any legal or equitable duty to pay PIP benefits, plaintiff is a mere volunteer—one who accidentally paid" PIP benefits. *Id*. (slip op at 6). "As a mere volunteer, plaintiff cannot seek equitable subrogation." *Id.*

## C. UNJUST ENRICHMENT

NGM also notes that its complaint included a count seeking relief for unjust enrichment. NGM impliedly argues that, even if this Court determines that ACIA was entitled to summary disposition on its equitable subrogation claim, it should be allowed to proceed in the trial court on its unjust-enrichment claim. We note that NGM never raised this argument in the trial court, and the trial court did not decide the issue. Issues not raised before, addressed, and decided by the trial court may not be raised on appeal. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008).

And, in any event, NGM's action for erroneously paid PIP benefits is not for unjust enrichment, but for subrogation. See *Federal Kemper*, 97 Mich App at 207-208.

## III. CONCLUSION

Because this Court is bound to follow *Amerisure*, 222 Mich App 97, and *Titan*, 270 Mich App 339, we conclude that NGM's claim in this case is one of equitable subrogation. Furthermore, we conclude that this claim is barred because NGM was a "mere volunteer" that paid benefits to someone who was not its insured. Accordingly, NGM is not entitled to the reimbursement it seeks from ACIA, and the trial court erred as a matter of law in granting NGM that relief.

We therefore vacate the trial court's denial of summary disposition in favor of ACIA, both of the trial court's orders granting summary disposition in favor of NGM, and the trial court's entry of judgment in favor of NGM. We remand this matter to the trial court for entry of summary disposition in favor of ACIA under MCR 2.116(I)(2). We do not retain jurisdiction. Defendant, having prevailed in full, may tax costs under MCR 7.219(F).

/s/ Brock A. Swartzle
/s/ Kathleen Jansen
/s/ Stephen L. Borrello